[Crim. No. 1967. First Appellate District, Division One.—February 10, 1939.]

THE PEOPLE, Respondent, v. GEORGE W. HICKMAN, Appellant.

6

Myron Harris, William H. Older, John J. Taaffe and George B. Harris for Appellant.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

WARD, J.—The grand jury of the county of Alameda presented an indictment against the defendant, a licensed and practicing attorney and city judge of Albany, charging in three counts: First, a violation of section 653f of the Penal Code of the State of California, alleging that defendant solicited George R. Fauset, Fred D. Hurlbut and C. D. Hoel to offer and join in the offer of a bribe in the amount of fifteen hundred dollars to certain state officers, namely, the members of the board of equalization; the second count charged an attempt to commit grand theft in the same amount on the same date against the property of the same parties named in the first count and the Lakeside Club, Inc.; the third count charged grand theft of a promissory note of the value of $1500, the property of George R. Fauset. A plea of not guilty was entered to the three counts. Defendant was found guilty by a jury on the second count,

namely, attempt to commit grand theft, and acquitted on the first and third counts. This appeal is prosecuted from the judgment of conviction and the order denying the motion for a new trial.

Fauset was connected with the Lakeside Club, Inc., in the conduct and operation of a restaurant and liquor business. He was ordered to show cause before the state board of equalization in Oakland why the Lakeside license should not be revoked. It was alleged that one of the club's bartenders had served intoxicating liquor to a minor female. A similar establishment and a hotel were cited in connection with the same matter. Fauset retained appellant as his attorney. Prior to the hearing, according to appellant, there was paid by Fauset $225 in two instalments, $125 and $100 respectively. Fauset testified that he had an agreement that the total charge would be $400 for attorney fees and an additional $30 as costs in the event it should become necessary to attend a hearing in Sacramento to review any possible unfavorable ruling or suspension that the board might make or impose at the Oakland hearing. The licenses of all three establishments were indefinitely suspended.

Appellant contends that the evidence is insufficient to sustain the verdict. The testimony given by the various witnesses is conflicting but, taking the portions thereof that tend to sustain the verdict, it appears in the transcript of testimony that not later than December 9, 1935, Fred E. Stewart, a member of the board of equalization, who supervised and directed the district wherein the Lakeside Club was located, informed appellant that he would recommend the restoration of the license. Prior to that time the president of the board had notified appellant that the restoration depended on Stewart's recommendation. On the following morning appellant attempted to contact Fauset on the telephone. Appellant then called Fred D. Hurlbut, one of Fauset's associates in the Lakeside Club and said that new arrangements had to be made. Hurlbut referred appellant to Fauset. Subsequently, in a telephone conversation with Fauset, appellant said that there was more "talk and trouble" than had been anticipated and that it was "going to take more money". Appellant called later in the day by telephone and part of this conversation was heard over an extension telephone by C. D. Hoel, a third associate in the

Lakeside Club. Hoel testified that "Mr. Fauset asked Mr. Hickman whether or not those men would accept less than the $1,500, and I heard the defendant ask someone in the room whether it could be done for less, and then we received a negative answer". The board took no action on the morning of December 10th, but on the following day restored the license. On the same day Fauset executed and delivered to appellant a promissory note for $1500. The jury acquitted appellant of soliciting Fauset and the others to offer and join in an offer to bribe the members of the board of equalization, and likewise acquitted appellant of the charge of grand theft, but found appellant guilty of attempting to commit grand theft upon the allegation that appellant attempted to take the property of the Lakeside Club and the associated partners therein. If the jury believed that appellant had fixed a reasonable fee for legal services to be rendered, and thereafter on an assurance by the supervising member of the board of equalization for the Oakland district, that the purpose for appellant's appearance, namely, to restore the license, would be accomplished without further effort on appellant's part, then the jury was justified in finding that an effort to obtain any amount in addition to the reasonable fee was an attempt to unlawfully and feloniously take away the property of another. (Sections 484, 664, Pen. Code.) Whether the fixing of the amount was in fact reasonable or excessive under all the circumstances, and if excessive, whether there was an intent to feloniously deprive the owners of the property, were questions of fact to be determined by the jury. The witness Stewart testified that he would have made a motion to restore the licenses of each establishment without the appearance of an attorney after thirty days had elapsed, if the licensees had appeared and made some kind of a showing, with the recommendation of the police officers.

In a case wherein the indictment sets forth several counts, and a verdict of guilty is returned on one count and a verdict of not guilty on another count, it is necessary, in determining whether the evidence is sufficient to sustain the guilty verdict, to differentiate between the essential ingredients of each offense from a factual and legal standpoint. In the instant case the manner and means employed by appellant in count two were identical with the method employed in counts one

and three, but the results were not the same under each count. The difference in the results is well exemplified in counts two and three. Count three charged grand theft, in that appellant "took the property of George R. Fauset, consisting of a promissory note of the value of fifteen hundred dollars". There was no evidence to show to a moral certainty and beyond a reasonable doubt that the promissory note had any value. The note in part read: " . . . we The Lakeside Club, Inc. & George R. Fauset promise to pay . . . ", but it was signed only by Fauset in his individual capacity. The note was not paid and eventually the Lakeside Club was closed and Fauset resorted to bankruptcy proceedings. The jury could have, and undoubtedly did, reach the conclusion that Fauset did not believe the statement of appellant that new difficulties had arisen in Sacramento, and that Fauset gave the promissory note to appellant, but never intended to pay the instalments. Likewise the jury evidently concluded that Fauset did not believe that the demand for $1500 was for the purpose of bribery. Under such circumstances no other verdict should be returned upon counts one and three than not guilty.

An attempt to commit an offense against the law is a direct ineffectual act toward its commission, with intent to consummate the crime. In the completed offense of grand theft it is necessary that the personal property of another should be feloniously taken away. In the attempt to commit such offense, it is not necessary that the owner should part with the property, and it is immaterial whether or not the intended victim believed the statements or relied upon the acts and circumstances which culminated in the ineffectual efforts toward the commission of the attempt. In the third count appellant was charged with actually taking a promissory note; in the second count he was charged with attempting unlawfully to take cash.

The cases cited by appellant are not in point. In *People* v. *Andursky,* 75 Cal. App. 16 [241 Pac. 591], the defendant was charged with rape upon a fifteen year old girl, and a violation of the Juvenile Court Act in that defendant had sexual intercourse with the minor girl. The alleged rape and the alleged intercourse referred to the same act. An acquittal upon one count was inconsistent with a conviction upon the other. In *Rosenthal* v. *United States,* 276 Fed.

714, the defendant was indicted in count one for receiving stolen property with the knowledge that it had been stolen, and in count two with having the identical property in possession, with knowledge that it had been stolen. The gist of each offense was knowledge of the fact that the property had been stolen. A verdict of guilty on either count would have conflicted with a verdict of not guilty upon the remaining count. Likewise, in *Kuck* v. *State,* 149 Ga. 191 [99 S. E. 622], a verdict finding a defendant guilty of selling spirituous liquors is repugnant to a verdict of not guilty upon a charge of having possession of the same liquor. In *People* v. *Novo,* 12 Cal. App. (2d) 525 [55 Pac. (2d) 915, 56 Pac. (2d) 560], the defendant was charged in count one with burglary in the first degree in unlawfully entering a building with intent to commit rape, and in count two with an assault upon a female with intent to accomplish sexual intercourse through the use of force and violence. The jury returned a verdict on the first count of guilty of burglary in the second degree, and of simple assault on the second count. The verdict on count one was a refutation of the charge of burglary with an assault, and hence the verdict on the second count was void. The court permitted the first verdict to stand upon the theory that the defendant entered the building with intent to commit rape, which is not inconsistent with the definition of burglary of the second degree. In the matter of *In re Johnston,* 3 Cal. (2d) 32 [43 Pac. (2d) 541], cited by appellant, there was no element in one count charging the specific offense, that was not identical with all of the elements alleged in a corresponding count charging conspiracy to commit the offense.

▇ In a case wherein a defendant is convicted on two counts relating to the same act, transaction or event, the test is, could the defendant be guilty of both. (*People* v. *Koehn,* 207 Cal. 605, 609 [279 Pac. 646].) When the defendant is convicted of one and acquitted upon another count, the test is whether or not the essential elements in the count wherein the defendant was acquitted are identical and necessary to proof of conviction on the guilty count. In *Oliver* v. *Superior Court,* 92 Cal. App. 94, 96 [267 Pac. 764], it is stated: "The situation is clearly different from that which would have been presented had the conspiracy charge contained allegations of a number of overt acts which, taken

together, would constitute grand larceny or embezzlement. Had the indictment been so drafted it could not be said that an acquittal of grand larceny or embezzlement would necessarily have been a determination that no criminal conspiracy pertaining to the same transactions had occurred." A single act may be a violation of more than one statute. If a single vital fact is necessary in proof of one offense, but not necessary in the other, an acquittal is not a bar and is not inconsistent with a conviction on the other.

In *People* v. *Coltrin*, 5 Cal. (2d) 649, 661 [55 Pac. (2d) 1161], quoting from *People* v. *Day*, 199 Cal. 78 [248 Pac. 250], the court said: " 'It may be conceded that if the two counts stated precisely the same offense that an acquittal upon one count would operate as an acquittal upon the other count. . . . It is not the great similarity in most of the facts constituting separate offenses but the presence of a fact necessary in one offense and absent in another that determines whether offenses are separate.' "

■ The offenses of grand theft and attempt to commit grand theft are not identical. In the completed offense, the property must be obtained, and in the attempt, the element of possession by the culprit may be entirely lacking, or, if the possession of the property is obtained, it may be valueless. If there is an intent to commit the crime, and an overt act is accomplished, the result may be ineffectual because of an obstruction physically or mentally on the part of the intended victim, but the crime of attempt is complete if the bar to the fulfillment of the object is unknown to the perpetrator at the time the overt act is performed. In *People* v. *Moran*, 123 N. Y. 254, 257 [25 N. E. 412, 413, 20 Am. St. Rep. 732, 10 L. R. A. 109], the court said: "The question whether an intent to commit a crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design." (*People* v. *Lee Kong*, 95 Cal. 666 [30 Pac. 800, 29 Am. St. Rep. 165, 17 L. R. A. 626]; *In re Magidson*, 32 Cal. App. 566 [163 Pac. 689].)

In the present case the jury determined from all of the circumstances that appellant attempted unlawfully and feloniously to take $1500 in cash, more or less, from the party named in the indictment. Under the facts of the case we are

unable to decide that the evidence was not sufficient to substantiate the implied findings of the jury.

Appellant contends that the testimony of Fauset is not corroborated as required by section 1110 of the Penal Code. According to appellant's own testimony, he originally contracted to receive a fee in amount far below the sum of $1500. The testimony of witness Hoel, as set forth heretofore, amply corroborates the testimony of Fauset.

On appeal, for the first time, appellant objects to a statement by the trial judge that part of the testimony of witness Hurlbut corroborated the testimony of witness Fauset. A mere reading of the statement indicates definitely that the court instructed in effect that the portion of Hurlbut's testimony was to be limited by the jury to corroboration of the fact that a conversation over the telephone had occurred, and. that Fauset was one of the participants.

Appellant presents eight assignments of error concerning rulings of the trial court on the admission of evidence. On appeal attention is called to the introduction of testimony elicited from appellant before the grand jury and read "wholesale" by the district attorney into the present record. At the time of its offer counsel for appellant and the trial judge made the following statements respectively which sufficiently answer the objection made upon appeal. "Mr. Harris: I think the objection might be premature. I might say briefly that as, we know, the Grand Jury investigation is a general investigation of many, many things. The portion of the investigation that would be admissible would be what touches upon what is classified here as the Lakeside Club, but all the other, such as relates trucking concerns and to Bergsten and a man named Connolly, would be incompetent, irrelevant and immaterial and not admissible. We will make a special objection on that ground." "The Court: Ladies and Gentlemen, the testimony of the defendant Hickman before the Grand Jury may be admitted in evidence subject to certain objections. That portion of it which has to do with his transactions in connection with the Lakeside Club, with Fauset, Hurlbut and Hoel, is submitted without restriction. The rest of his testimony subject to motion or specific objections to be made later on, may be admitted in evidence for the limited purpose of showing, if it does show, the defendant's familiarity with the procedure of the Board

of Equalization and the method of procedure of said Board of Equalization and his acquaintance and association with any member of the Board of Equalization. It must not be considered by the Jury for any other purpose, and none of it is admitted for the purpose of showing or tending to show, if it does show, any other alleged independent offense or offenses, other than there is set forth in the indictment, subject to specific objections later on."

Wide latitude in the admission of evidence was extended to each side in the trial of this case. Much of the evidence could have been eliminated but we are not prepared to say, after an examination of the entire transcript, that it was not admissible, and particularly the matters touched upon during cross-examination by appellant's counsel. This was a case in which both the prosecution and the defense found it necessary to endeavor to paint a picture of the amicable or hostile condition of mind of appellant and the various witnesses or the parties named by witnesses, and through circumstantial evidence to draw inferences favorable or unfavorable to the respective sides. Some of the evidence was introduced as part of the *res gestae;* some to rebut certain contentions of appellant presented during the trial. Part of the evidence objected to related to appellant's experience in practice before the board of equalization, and the fees charged in various cases, also to the fee charged by another attorney representing the proprietors of a hotel who had been cited on an order to show cause why their license should not be revoked, which citation was akin to the citation against the Lakeside Club. Much of the evidence was introduced first without objection, and subsequently, when an effort was made to elaborate and explain the evidence, an objection was made.

A great deal of evidence which appellant claims was prejudicial to his rights related to the close relationship that seemed to exist between appellant and a member of the board of equalization. This evidence, if prejudicial, concerned the allegations set forth in count one. That it did not prejudice the jury is best exemplified by the jury's action in acquitting appellant upon the charge of soliciting Fauset and others to join in the offer of a bribe. The evidence of witness Gleason, who testified to appellant's activity in suggesting that a fee in another matter might be divided with a member of the board of equalization, may have been prejudicial to appellant

on count one. Whatever inference might be drawn from the Gleason testimony, it could not injure the theory of the defense on count two, namely, that the fee fixed was a reasonable fee, and that the whole thereof was to be retained by appellant and not split or divided with anyone. The court instructed the jury: "This defendant is on trial only for the offenses charged in the indictment, and you may not convict him of any of the offenses charged in the indictment solely, or only, or because you may believe, if you do believe, that he is guilty of some other crime or public offense or offenses not charged in the indictment." "The testimony of Walter Gleason may only be considered by you as tending to show, if it does so tend to show, the relationship existing between the defendant and Fred E. Stewart, and the defendant's knowledge of the manner of presenting matters before the State Board of Equalization. The testimony of the witness Bergsten may only be considered by you for the purpose of tending to show, if it does tend to show, the relationship existing between the defendant and Fred E. Stewart and in considering the truth or falsity of the defendant's testimony as to reasons why he went to Sacramento on December 7th and remained there until December 11th." We cannot conclude that the evidence noted in the briefs prejudiced appellant's rights, and certainly it was not prejudicial so far as count two was concerned.

Appellant cites fourteen items of alleged misconduct of the assistant district attorney and claims that they represent a series of subtle and adroitly conceived incidents which in accumulative effect gravely prejudiced appellant. The first incident refers to a question propounded to witness Stewart: "On the 12th of December did you borrow $800?" The question was proper to assist in refreshing the recollection of the witness relative to dates. The witness volunteered the reason for the loan and that part of the answer was permitted to stand without objection. This is a fair example of the questions or statements from which some inference unfavorable to appellant might have been drawn respecting count one.

The alleged misconduct that might be construed as statements made or questions asked in reference to count two are as follows: "Now he has testified before the Grand Jury in certain ways and he has testified here in other ways."

"Well, there is plenty to show that you did so testify."
"Q. You think it is proper for a Judge to be connected or be interested in any way in connection with criminal cases?"
"Q. When he told you that, Judge, did you remind [him] of the fact that he had made an order allowing minors to work in places where liquor was sold and such an order was a direct violation of the State?" "Oh, he changed his testimony. Do you wish to change your testimony in any other regard?" "Q. There was a certain telephone call that did not have anything to do with business, a telephone call down here to Oakland. . . . It was not to your family either, was it?" An examination of the transcript would seem to show that the foregoing statements and questions did not have their origin in any preconceived plan on the part of the prosecutor to prejudice the appellant in the minds of the jurors, but rather were provoked by caustic remarks made by opposing counsel in repeated objections and assignments of error, with or without merit. Irrespective of the actuating motives of opposing counsel, the question arises, did the remarks and questions of the assistant district attorney, accumulative in effect, prejudice appellant. The reference to the fact that appellant had testified before the grand jury in "other ways", and likewise the question, calling for the conclusion of the witness, as to whether a judge as an attorney should prosecute or defend criminal cases, are matters that might. have been left for argument before the jury. The reference to the policy of the board of equalization permitting minors to work in places where liquor is sold might have a possible tendency to degrade witness Stewart, but we hardly see how it could prejudice the defendant in view of the verdict on count one. The assistant district attorney's question in relation to a telephone call to someone other than a member of appellant's family was propounded in connection with the cross-examination of appellant as to his recollection of his activities covering certain dates. Appellant now contends that the asking of this question was "unpardonable conduct", and that the purpose of the question was to imply that appellant sought to arrange a clandestine meeting. Eliminating the statements in appellant's brief and likewise the reasons set forth for the question in respondent's brief, which are not substantiated by the record, we must, after reading the transcript of testimony, conclude that the

question or the testimony given prior or subsequent thereto does not justify the implication placed thereon by appellant

If, as appellant contends, the assistant district attorney, through his conduct, prejudiced appellant's right to a fair trial, we cannot understand why the jury did not convict upon count one, the charge to which the alleged improper questions in major part were addressed. The acquittal of appellant on count one is an acquittal of the prosecutor upon the charge of misconduct as to any question, or that his conduct generally in asking the questions resulted in accumulative effect of prejudicing the appellant.

Turning to the claim that the court erred in refusing to give four of appellant's proposed instructions, we find that two of them might be worthy of consideration if the defendant had been convicted of grand theft instead of an attempt to commit grand theft. The other two were grounded upon the theory that this was either a case of fixing a contingent fee or a fee to be fixed in the discretion of one of the interested parties. But the facts indicate that this was a case in which a fee had been fixed. Whether the jury believed appellant's or witness Fauset's testimony as to the agreed amount, no other conclusion could be reached than that a contract for fee had been made. The subsequent effort to obtain $1500 was made upon representation that further legal services were necessary when in fact appellant knew that the petition to restore the license would be granted.

Appellant argues that, assuming the fee to be excessive, such fact cannot afford a predicate to sustain a conviction in a criminal case. An attorney is well within his rights in charging a substantial and fair fee based upon services rendered or for services to be rendered in the future upon matters then undetermined, but when an unfair advantage is taken of a client, and a legal fraud perpetrated with felonious intent to steal the property of the client, all remedies imposed by law for the protection of the client may be invoked but cannot abridge the right of the state to penalize for a violation of the criminal code.

Appellant also objects to four instructions given covering the subjects of "attempt", "corroboration", "expert testimony" and the "legality of the contract from a civil aspect". When read with all of the instructions the jury was fairly informed upon the law applicable to the facts

18

of the case, and no error appears prejudicing or tending to prejudice the substantial rights of the defendant.

The judgment and order denying a motion for a new trial are affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 10, 1939.