[Crim. No. 4227. Second Dist., Div. Two. Oct. 6, 1948.]

THE PEOPLE, Respondent, v. NATHAN PARRISH, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of attempted murder, after trial before the court without a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial.

The evidence being viewed in the light most favorable to the People (respondent), discloses the following facts:

On the evening of September 13, 1947, defendant introduced himself to Mr. Thomas who feigned to be an accomplice throughout the events herein described. Defendant told Mr. Thomas he had a deal which would result in obtaining for him $2,600 from defendant's wife, and that he (defendant) did not want any part of it; that all he wanted was some valuable papers, particularly life insurance of his wife. Defendant stated that he intended to kill his wife with a .22 caliber rifle which he owned, and that after she was dead he would inherit her property and would no longer have to pay her alimony. He suggested that Mr. Thomas go with him to Mrs. Parrish's house where Mr. Thomas, under the pretext of being interested in buying property in the area was to gain admission. Defendant would follow him into the house and "do the rest."

Mr. Thomas made an appointment with defendant to meet him in the 800 block on Fair Oaks Avenue in Pasadena between 7 and 7:30 p. m. on the following Monday, September 15, 1947. Before this date Mr. Thomas learned the address of defendant's wife and communicated the plan to her. She in turn told the local police officers about the scheme. Mr. Thomas and defendant met at the appointed place on Monday night, but defendant said he had to take a lady to the hospital and it would be too late thereafter to execute the plan. He therefore arranged to meet Mr. Thomas the following night, on Tuesday, at the same time and place. This fact Mr. Thomas in turn communicated to defendant's wife.

Mr. Thomas and defendant met as planned, whereupon they proceeded in Mr. Thomas's car to the home of Mrs. Parrish. When defendant met Mr. Thomas he was carrying a .22 rifle under his sweater. When they entered Mr. Thomas's car this rifle was placed in the back of the car. Defendant gave the directions to his wife's home and en route asked if Mr. Thomas had any gloves, stating "We can't have no fingerprints." Defendant at the time had a pair of gloves in his hand and stated that he was taking the gun along in order to kill his wife.

The car was parked approximately three blocks from Mrs. Parrish's home. The two men walked to the house and defendant explained to Mr. Thomas the arrangement of the rooms in it. They listened to see if anyone else was in the house and then returned to the parked car. Thereafter they entered the car which was driven to the front of Mrs. Parrish's home and parked immediately to the west thereof at about 8:15 p. m. Defendant then stated, "I tell you what we do. When you go there and use the method of going into the house that I told you and you get her in the bedroom, you choke her." Mr. Thomas asked what defendant was going to do and he said, "When you do that I will come right in and you leave at that point."

Mr. Thomas then left the car and went into the house while defendant remained in the front seat. Two police officers who were in the home left by the back door and found defendant seated in the front seat with the .22 rifle in the rear of the car, which rifle was loaded with one shell in the chamber and six in the magazine. The officers then arrested defendant.

Defendant relies for reversal of the judgment on the proposition that *the evidence is insufficient to sustain the judg-*

*ment of guilty for the reason that the evidence discloses that the acts of defendant and his feigned accomplice did not go beyond mere preparation for the commission of the crime.*

This proposition is untenable. ■ The essential elements required for the proof of the crime of attempted murder are (1) a specific intent to commit the crime, and (2) a direct ineffectual act done towards its commission. (*People v. Miller*, 2 Cal.2d 527, 530 [42 P.2d 308].)

■ (1) There is no question that the evidence is ample to sustain the trial judge's finding that defendant possessed the first element, that is, the intent to murder his wife, since the testimony disclosed that defendant had stated that he intended to kill his wife.

■ (2) The second element of the crime of attempted murder is likewise present. It is settled that the overt act necessary to supply the second element need not be the last proximate act prior to the commission of the crime itself. (*People v. Fiegelman*, 33 Cal.App.2d 100, 104 [91 P.2d 156].)

■ After preparation for the commission of the crime, if a defendant performs acts which amount to the commencement of the accomplishment of the intended offense, such acts constitute overt acts sufficient to meet the requirements of the second element above set forth for the commission of the crime of attempted murder. (*People v. Lanzit*, 70 Cal.App. 498, 505 [233 P. 816].)

■ In the present case, when defendant entered Mr. Thomas's car on the evening of September 16, 1947, possessed of a loaded gun with plans to kill his wife, drove to her home, listened to see if there was any person present in her house, and sent Mr. Thomas into the house so that he, defendant, might gain entrance and kill his wife, such acts constituted overt acts toward the commission of the crime sufficient to sustain the trial court's findings to that effect. (*Stokes v. State*, 92 Miss. 415 [46 So. 627, 628 et seq., 21 L.R.A. N.S. 898]; *People v. Stites*, 75 Cal. 570, 576 [17 P. 693]. See also *People v. Miller*, 2 Cal.2d 527, 532 [42 P.2d 308].)

The following cases relied on by defendant are readily distinguishable from the present case. In *People v. Collins*, 53 Cal. 185, defendant was convicted of burglary. The entry relied on to sustain the conviction was by a feigned accomplice who lacked the necessary intent for the commission of the crime. Hence, since there was no intent to commit a crime there could be no attempt to commit it. In the case at bar

the evidence discloses that defendant had the intent to murder his wife.

In *People* v. *Murray*, 14 Cal. 159, an uncle who had eloped with his niece sent for a magistrate to marry them. It was held that defendant had performed only a preparatory act rather than one in furtherance of the crime of incest. It is clear that this is a case verging on the borderline, and one which carries the doctrine of preparatory act to the extreme limit.

*People* v. *Miller*, 2 Cal.2d 527 [42 P.2d 308], is distinguishable from the present case on two grounds: (1) In the cited case the first element of the crime of attempted murder, specific intent to commit a crime, was not proved. (See p. 532 of the opinion.) (2) The trial court had read prejudicial instructions to the jury. Neither of these situations is present in this case.

*People* v. *Werner*, 16 Cal.2d 216 [105 P.2d 927], is clearly inapplicable to the present case since the acts of the defendant in such case were obviously preparatory, the defendant, E. P. Werner, not intending to commit any overt acts until the day following the performance of the acts urged as overt acts.

Since the record appears to be free from error the judgment and order are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.