[Crim. No. 2357. Third Dist. Oct. 22, 1952.]

THE PEOPLE, Respondent, v. AFTON G. VAN BUSKIRK, Appellant.

Gant & Badger for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

PEEK, J.—This is an appeal by defendant from his conviction of attempted murder and from the order denying his motion for a new trial.

Defendant, his wife and daughter had been living with defendant's sister and her husband, Mr. and Mrs. Brown. The complaining witness, Brown, had not seen the defendant for approximately two weeks prior to the date of the alleged offense.

After writing a note, which is hereinafter set forth at length, defendant proceeded to the home of his brother-in-law, armed with a 25-caliber Colt automatic. No one was there on his arrival, but shortly thereafter the Browns and their three children, and Mrs. Van Buskirk and her child, arrived in the Brown car. Defendant was on the front porch when they drove up. Defendant walked over to the left front fender of the car. Brown got out and passed around the front of the car on the way to help the others out of the car. Defendant then said to Brown that he "came out to settle it all," that he was "going to kill us all."

Brown hurried the women and children into the house. When he returned defendant was standing by the left front fender with his right hand in his hip pocket. As Brown approached defendant made a statement to the effect that Brown "could beat the hell out of him, but he had a gun and it was loaded." Brown attempted to talk him out of his plan to kill all of them but defendant brought the gun out of his pocket, raised it to an angle, apparently pointing over Brown's head and fired. After the shot was fired defendant pointed the gun directly at Brown who continued to try to talk him out of his plan. Defendant replied he was "an old man, he had lived his life and he didn't care what happened to him." He also said he knew the persons in the house were calling the police but "we would all be dead before they got there." At that moment the sheriff's car turned the corner. Defendant, noticing this, again stated he was going to kill them all, whereupon he pulled the trigger of the gun, but it failed to fire. He then turned and ran to the side door of the house, trying to gain entrance into the house. Brown, after the misfire, ducked down, using the car as a shield. While standing by the door defendant ejected a shell and put another in the gun and again leveled it at Brown. A short time later the officers found defendant was then hiding in the bushes near the house.

The gun was in such a worn condition that after being fired it would not always recock in a manner which would successfully allow a second shot merely by squeezing the trigger, but it could be properly recocked by hand so it would fire even when such situation did occur.

Defendant's statement after being arrested was to the effect that his only purpose in going to the Brown home and his reason for firing the shot over Brown's head was merely to scare the Browns and his wife so that he would be allowed to visit his daughter. However upon his person was found a note addressed to the district attorney, which read: .

"The reason I am killing my wife and her in laws is because they will not let me see my baby and any one that shuts me off from seeing my baby is headed for hell. My brother-in-law is first, and my sister-in-law is second, and my wife is third, and I am fourth. I am sorry to do this but it has been coming on for about 8 months. The baby needs her mother and her dad next, but the sister in law does not believe it. The sister-in-law is the cause of it all because she does not like me, never has.

A. G. Van Buskirk."

Because of defendant's failure to comply with the Rules on Appeal, particularly with regard to rule 15, the court has found it extremely difficult to ascertain the exact grounds upon which defendant bases his appeal. However we will assume that two contentions have been made, the first, the usual contention that the evidence is insufficient to sustain the conviction, and, the second, that the court erred in failing to give certain instructions proposed by defendant. Both contentions are wholly without merit.

If the court is correct in its assumption that the defendant first attacks the sufficiency of the evidence to support the verdict, such attack appears to be upon the theory that since the first shot was not fired at Brown but was fired over his head and thereafter defendant could not fire the gun because of mechanical difficulties he was incapable of committing the crime of attempted murder. That, in any event, his only purpose in going to the Brown home was to frighten his wife and the Browns into allowing him to see his daughter.

The crime of attempted murder is complete if there is a concurrence of the intent to commit such crime with a direct, although ineffectual, act done towards its commission

(*People* v. *Miller,* 2 Cal.2d 527 [42 P.2d 308]; *People* v. *Lee Kong,* 95 Cal. 666 [30 P. 800, 29 Am.St.Rep. 165, 17 L.R.A. 626]; *People* v. *Grant,* 105 Cal.App.2d 347 [233 P.2d 660]; *People* v. *Neal,* 97 Cal.App.2d 668 [218 P.2d 556]; *People* v. *Parrish,* 87 Cal.App.2d 853 [197 P.2d 804]; *People* v. *Lanzit,* 70 Cal.App. 498 [233 P. 816]), and if the means used by the defendant and the surrounding circumstances make the crime apparently possible. (*People* v. *Lee Kong, supra*; *People* v. *Fiegelman,* 33 Cal.App.2d 100 [91 P.2d 156]; *In re Magidson,* 32 Cal.App. 566 [163 P. 689]; 7 Cal.Jur. 879, § 33; 22 C.J.S. 142, § 77; 14 Am.Jur. 817, § 69.)

In the instant case the evidence shows that he went to the Brown home and there met his intended victims; that while standing near Brown he made several threats to take Brown's life; that he pulled a gun and fired over Brown's head and that upon the arrival of the officers he attempted to shoot Brown, only failing to do so by reason of the defective recocking mechanism and the approach of the officers that left him no time to manually cock the gun and fire. Furthermore the record also shows that prior to this time he had written the note to the district attorney in which he explained the action he contemplated.

Under these facts we think it clear that the defendant, with specific intent, made a direct, although ineffectual, act toward the commission of the crime with means and under circumstances appearing to make such crime possible of commission. No more than this is required under the law.

The defendant's next attack is directed at the failure of the court to give his proposed instruction No. 24. That instruction would have directed the jury in positive terms that if the first time the defendant fired the gun he only intended to frighten Brown and if when he pulled the trigger the second time the mechanism was in such condition that the gun would not fire, then defendant could not be guilty of the offense charged. The proposed instruction was inapplicable under the facts as shown by the record. For the same reasons as are set forth in the preceding paragraph in answer to defendant's first contention such instruction was an erroneous statement of law. Hence the court's refusal to give the same was proper. (See 8 Cal.Jur. 321.)

Defendant's next contention is that the court erred in failing to give his proposed instruction No. 33, which reads: ''Firing a gun at a person in itself creates no presumption of law that the defendant intended to murder the

person fired at.'' In support of this contention he cites and relies upon two cases, *People* v. *Snyder*, 15 Cal.2d 706 [104 P.2d 639], and *People* v. *Maciel*, 71 Cal.App. 213 [234 P. 877]. Neither of the cases so cited supports the correctness of the proffered instructions. In the Snyder case the Supreme Court, upon facts which are wholly dissimilar to the instance case, reversed the trial court on the ground that the court had given erroneous instructions and not upon the ground that the instruction similar to the one offered by defendant herein was refused. Likewise in the Maciel case the judgment of conviction of assault with intent to commit murder was reversed on the ground that the court erroneously instructed the jury with respect to the requirement approving specific intent. ██ As the court in that case stated at page 218:

''. . . It is only when the intent is not made an affirmative element of the crime that the law presumes that the act, if knowingly done, was done with a criminal intent. (16 C.J., p. 81.) When a specific intent is an element of the offense it presents a question of fact which must be proved like any other fact in the case. It is none the less a question of fact though it cannot be proved by direct and positive evidence. *All the circumstances surrounding the act furnish the evidence from which the presence or absence of the specific intent may be inferred by the jury; and no presumption of law can ever arise that will decide it.''* (Citations.) (Emphasis added.)

██ An instruction, such as here proposed, would have the effect of removing one of the important circumstances surrounding the occurrence, namely, the actual firing of the gun, from the consideration of the jury in determining specific intent. Therefore the converse of the proposition enunciated in those cases does not hold true, and refusal of this instruction was proper.

Defendant lastly contends that the court also erred in failing to give his proposed instruction No. 36 which related to the abandonment of a criminal intent as manifest by an unequivocal act. Again we find nothing in the evidence to support such a contention. It is too clear to warrant further discussion that such facts are wholly devoid of any evidence of abandonment.

The judgment and order are affirmed.

Van Dyke, J., and Schottky, J. pro tem., concurred.