[Crim. No. 22422. First Dist., Div. One. Jan. 12, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ALLEN CECIL, Defendant and Appellant.

**COUNSEL**

Ernest Krause, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, and Herbert F. Wilkinson, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

SIMS, J.*—Defendant has appealed from a judgment of conviction entered upon a jury verdict which found him guilty of attempted arson in

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

violation of section 455 of the Penal Code.[1] He was sentenced to eight months in state prison, to be served consecutively with a prior uncompleted sentence for rape, and given credit for one day spent in custody in county jail.

■ On November 6, 1979, the date of the alleged offense, those provisions were found in section 451a of the Penal Code, and the original information filed March 10, 1980, charged a violation of that section. By Statutes of 1979, chapter 145, section 9, effective January 1, 1980, the provisions of section 451a were amended and renumbered as section 455. The information was amended on its face by striking 451a and inserting 455 by "M W Judge," apparently on September 15, 1980, when the defendant appeared before a judge bearing those initials. After a challenge under section 170.1 of the Code of Civil Procedure, further proceedings were held in other departments.

The defendant was punishable under the provisions of section 451a because they were substantially reenacted in section 455. (*In re Dapper* (1969) 71 Cal.2d 184, 189 [77 Cal.Rptr. 897, 454 P.2d 905], cert. den. 397 U.S. 905 [25 L.Ed.2d 90, 90 S.Ct. 906].) Since the defining language as quoted above is the same in both sections, and since there was no increase in the punishment provided (cf. Pen. Code, § 455 with former Pen. Code, § 451a and Pen. Code, § 18 as amended by Stats. 1976, ch. 1139, § 98, operative July 1, 1977), defendant has suffered no prejudice by the use of the number of the statute enacted after the commission of the crime.

Defendant contends that his conviction should be reversed because the evidence reflects that the acts committed by defendant and his codefendant could not have resulted in arson and therefore it was impossible for him to commit attempted arson. As further ground, he urges that he was prejudiced and his conviction is tainted because he was under restraints in a holding cell at a place where he could have been observed by passing jurors. Finally, he seeks credit for 413 days he was

---

[1]Penal Code section 455 provides in relevant part, "Any person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any ... property, or who commits any act preliminary thereto, or in furtherance thereof, is [guilty of a felony]. [¶] The placing or distributing of any flammable, explosive or combustible material or substance, or any device in or about any ... property in an arrangement or preparation with intent to eventually willfully and maliciously set fire to or burn same, or to procure the setting fire to or burning of the same shall, for the purposes of this act constitute an attempt to burn such ... property."

held in custody on an unrelated charge, because the pendency of the instant case was a substantial reason for denial of bail on the former charge. We find no merit in these contentions. The judgment must be affirmed.

Approximately a year before the incident involved in this case, the defendant and the daughter of the owner of the automobile that was the subject of the attempted arson rented a house in Pleasant Hill. Various members of the young woman's family, including her father, Mr. Fry, lived in the premises, also. By October 1979, there was a breakup in the relationship of the daughter and defendant; and she kicked him out of the house. Thereafter, the defendant made several threatening phone calls late at night; and Mr. Fry, who received them, reported them to the police.

Just after midnight on November 6, defendant and his codefendant, Merlin Roper, purchased four to six butane lighter refill cans. Roper made the purchase with money furnished by defendant.

Shortly before 3 a.m. the same morning, a neighbor directly across the street from where Fry resided was awakened by a hammering noise. He looked out and observed a man kneeling at the rear of the Fry car which was parked by the curb. He yelled at the man and he walked rapidly away. The police appeared soon. The neighbor could not remember whether or not he had called them. In any event, at least four officers and an arson investigator went to the scene. Roper was apprehended leaving the scene and defendant was discovered on the floor of a vehicle parked on the wrong side of the street in the same area. Examination of Fry's car revealed that a punctured butane can had been jammed into the gas tank and a partially burned piece of carpeting had been used as a wick, but had fallen to the ground. Burn smudges were noted on the car's fender directly below the gas tank's opening, and the gas tank cover; and a burned paper match and some ashes were found on the pavement below.

On the discovery of the foregoing, the two suspects were arrested. Carpeting of the same fabric as that used in the wick was found in the car where defendant was hiding. Roper had a service Army knife which had on it fibres similar to the carpeting. The puncture marks in the can appeared to have been made by a similar knife. Roper's fingerprints were on the butane can found in the gas tank opening.

Defendant offered evidence to show that there was some uncertainty in a prior attempt to have the store clerk identify the defendant from photographs. He also produced a witness, an admitted recaptured San Quentin escapee, who testified that in November 1979, Fry had requested him to beat up the defendant.

I

The arson investigator testified that based on the evidence observed at the scene, someone had tried to burn the car by introducing flammable and explosive-like material into the gas tank. He further testified that he had never seen an auto/arson fire via the gas tank. No apparent effort had been made to puncture the tank or build a fire underneath. Attempts to cause a fire with the punctured butane canister and wick would not have been effective. The gasoline in the tank would not be caused to burn or explode in that manner because of a lack of oxygen. Still, he believed it was a serious attempt to set the car on fire because he had seen many circumstances where people had stuck a wick down the fill spout of a gasoline tank thinking it would explode or burn; and he concluded that most people do not know that a gasoline tank cannot be caused to explode in that manner.

■ At the conclusion of the People's case, the defendant made a motion for a directed verdict of acquittal (Pen. Code, § 1118.1) on the ground that the defendant could not be held guilty of an attempt if the acts performed could not have resulted in the completed crime if carried to a conclusion. He renews that argument here in reliance on the doctrine of impossibility as enunciated in *People* v. *Jaffe* (1906) 185 N.Y. 497 [78 N.E. 169]. There the court did state, "If all which an accused person intends to do would if done constitute no crime it cannot be a crime to attempt to do with the same purpose a part of the thing intended. (1 Bishop's Crim. Law (7th ed.) sec. 747.)" (185 N.Y. at p. 501 [78 N.E. at p. 170].) Although followed, *Jaffe* has been questioned in its state of origin. (See *People* v. *Jelke* (1956) 1 N.Y.2d 321, 328-329 [152 N.Y.S.2d 479, 485-486, 135 N.E.2d 213, 218] [recognizing that an attempt may specifically be made a crime]; and *People* v. *Rollino* (1962) 37 Misc.2d 14, 19, 22 [233 N.Y.S.2d 580, 585, 588] [following *Jaffe* but recognizing the necessity of modifying it to follow the progressive and more modern contrary view of California and the American Law Institute].)

Defendant recognizes that in this state *Jaffe* has been rejected. (See *People* v. *Rojas* (1961) 55 Cal.2d 252, 256-258 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]; *Lupo* v. *Superior Court* (1973) 34 Cal. App.3d 657, 662-663 [110 Cal.Rptr. 185]; *People* v. *Meyers* (1963) 213 Cal.App.2d 518, 522 [28 Cal.Rptr. 753]; and *Faustina* v. *Superior Court* (1959) 174 Cal.App.2d 830, 833-834 [345 P.2d 543]. Cf. *Young* v. *Superior Court* (1967) 253 Cal.App.2d 848, 853-854 [61 Cal.Rptr. 355], criticized in *Lupo* v. *Superior Court, supra,* 34 Cal.App.3d at p. 662, and overruled in *People* v. *Wright* (1980) 105 Cal.App.3d 329, 332 [164 Cal.Rptr. 207].) In *People* v. *Rojas, supra,* 55 Cal.2d 252, as in *People* v. *Jaffe, supra,* 78 N.E. 169, the question was whether the receipt of goods originally stolen but recovered and then offered to catch a reputed receiver of stolen property could constitute an attempt. The court reviewed *Jaffe* and numerous commentaries and concluded: "The situation here is materially like those considered in *People* v. *Camodeca* (1959), 52 Cal.2d 142, 146-147 [6-9] [338 P.2d 903] (attempted theft by false pretenses); and *People* v. *Lavine* (1931), 115 Cal.App. 289, 300-301 [11] [1 P.2d 496] (attempted extortion). Each of those cases is decided on the hypothesis that the defendants had the specific intent to commit the substantive offense and that under the circumstances as the defendants reasonably saw them they did the acts necessary to consummate the substantive offense; but because of circumstances unknown to defendants, essential elements of the substantive crime were lacking." (55 Cal.2d at p. 257. See in addition to cases previously cited, *Shadle* v. *City of Corona* (1979) 96 Cal.App.3d 173, 180 [157 Cal.Rptr. 624]; *People* v. *Staples* (1970) 6 Cal.App.3d 61, 65-66 [85 Cal.Rptr. 589]; *People* v. *Parker* (1963) 217 Cal.App.2d 422, 427-428 [31 Cal.Rptr. 716]; *People* v. *Siu* (1954) 126 Cal.App.2d 41, 43-44 [271 P.2d 575]; *People* v. *Van Buskirk* (1952) 113 Cal.App.2d 789, 793 [249 P.2d 49]; *People* v. *Grant* (1951) 105 Cal.App.2d 347, 355 [233 P.2d 660]; *People* v. *Parrish* (1948) 87 Cal.App.2d 853, 856 [197 P.2d 804]; *People* v. *Fiegelman* (1939) 33 Cal.App.2d 100, 106 [91 P.2d 156]; *People* v. *Hickman* (1939) 31 Cal.App.2d 4, 10 [87 P.2d 80]; *People* v. *Lanzit* (1925) 70 Cal.App. 498, 504-509 [233 P. 816]; and *In re Magidson* (1917) 32 Cal.App. 566, 570 [163 P. 689].)

Defendant seeks to avoid the application of the principles applied in the foregoing cases because in this case in the "usual course of events" the crime of arson could not be committed. There was no intervening covert action such as is found in the "receiving" cases, or in the sale of talcum powder instead of heroin by an undercover policeman. He likens

it to charging a person who, with intent to murder, sticks pins in a voo-doo doll.

That analysis overlooks the fact that the Legislature has specifically made the acts performed by defendant's accomplice a separate crime. (See fn. 1, and *People* v. *Archibald* (1958) 164 Cal.App.2d 629, 634-635 [331 P.2d 69].) The hazards of fire are considered so great that it is necessary to deter not only the crime itself but attempts accompanied by the use of flammable, explosive or combustible materials whether successful or not.

Moreover, the situation is not unlike *People* v. *Grant, supra,* 105 Cal.App.2d 347, where the accused's complicated time bomb designed to blow up the airplane carrying his wife, prematurely detonated. (See 105 Cal.App.2d at pp. 351-352.) The court stated, "The law is settled that an unforeseen circumstance which prevents the commission of the crime attempted is not a matter of defense when the defendant is charged with the crime of attempt." (*Id.*, at p. 355. See also *People* v. *Van Buskirk, supra,* 113 Cal.App.2d 789, 792-793, defective gun.)

We also note that there is little difference between the bungling confederate with little knowledge of the chemistry of combustion and the informing confederate who defeats his principal's plan. (See *People* v. *Parrish, supra,* 87 Cal.App.2d at pp. 854-856; and *People* v. *Lanzit, supra,* 70 Cal.App. at pp. 503-504, 508.)

Here the imperfections of the methods selected by defendant did not render the attempt impossible. The trial court properly denied the motion for acquittal and we reject the same contention here.

The foregoing makes it unnecessary to consider that perhaps some arson was committed in scorching the car. (See *People* v. *Sherman* (1950) 97 Cal.App.2d 245, 248-249 [217 P.2d 715] [note poorly combustible material used to start fire]; and *People* v. *Haggerty* (1873) 46 Cal. 354.)

## II

At sentencing, the defendant moved for a new trial on the grounds that the defendant had appeared before the jury in restraints on several different occasions and specifically that when the jury was locked up, the jury room was so located that the jurors paraded by a

holding cell where the defendant was locked up at the time. According to counsel, at least several of the jurors looked through the window of the holding cell and saw the defendant as they were going in for deliberations.

No affidavits of jurors, or of others, that the jurors had so acted were filed in support of the motion. No portion of the record where the point was brought to the attention of the trial judge prior to the motion for new trial has been cited to this court.

The record shows that the defendant was convicted of rape and sentenced to six years in state prison on March 21, 1980, eleven days after the information was filed in this case.[2] There was a showing before the court that the defendant was going to call an inordinate number of inmates as witnesses and the authorities feared an escape attempt. There was no error in restraining the defendant out of the courtroom. Here the court was unaware that there might be a viewing of the defendant in custody. In the absence of a timely objection, the defendant cannot raise the point now. (*People* v. *Chacon* (1968) 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].) Any prejudice from merely observing that the defendant is in custody, such as his being brought in under escort of an officer, or the alleged view in this case, may be cured by admonition. (*People* v. *Duran* (1976) 16 Cal.3d 282, 291-292 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Chacon, supra,* 69 Cal.2d 765, 778.) None was requested in timely fashion.

The defendant relies on *People* v. *Duran, supra,* 16 Cal.3d 282. In that case, the court denied a motion that the defendants and witnesses be allowed to appear unshackled, without any showing that such procedures were necessary. There the defendant testified and the reviewing court found prejudice because his credibility as a witness was damaged by the shackles. (16 Cal.3d at p. 296.) There is nothing in *Duran* to indicate any error under the facts and circumstances of this case. In fact the court in that case observed, "We note that the case at bar does not involve a situation wherein the defendant was seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors or veniremen. [Citation.] Such brief observations have generally been recognized as not constituting prejudicial error. [Citations.]" (*Id.,*

---

[2]His conviction was affirmed in an unpublished opinion filed July 28, 1981 (*People v. Cecil,* No. 1 Crim. 21282).

at p. 287, fn. 2. See also *People* v. *Romo* (1967) 256 Cal.App.2d 589, 598 [64 Cal.Rptr. 151].)

Even if there were error in the particulars voiced by defendant, we have no hesitancy in finding it harmless by any standard. (See *People* v. *Jacla* (1978) 77 Cal.App.3d 878, 887-891 [144 Cal.Rptr. 23].)

## III

The history of this case transcends a long period of time. Defendant was arrested November 6, 1979, at the time of the offense. According to his attorney, who requested an allowance of 413 days at the time of sentencing, he was admitted to bail at that time on this offense. He was arrested on the rape charge (see fn. 2) on December 3, 1979, but did not post bail until January 15, 1980. There is no attempt to relate that period of confinement to the instant charge. He was again in custody from January 24, 1980, to March 17, 1980; and apparently after four days of freedom, he went to state prison where he has been confined except for the periods he was in local custody during hearings and trial in these proceedings. All of that confinement stems from his arrest and conviction for rape, and we may assume he was given proper credit for local custody in his commitment March 21, 1980.

Defendant has augmented the record with copies of minute orders entered in the rape proceedings. On June 9, 1980, the trial court denied bail on appeal for the reasons set forth in the margin.[3] A second minute order was entered on January 13, 1981, in response to defendant's motion to strike certain allegations in a bail report and recommendation filed with the court on January 25, 1980, in connection with the rape proceedings. The motion was denied, but the judge related that he reduced the bail [apparently that recommended] on January 30, 1980, because the allegations in the report concerning the use of aliases, leaving the court and failures to appear did not exist. ▉ Defendant argues that since the order denying bail on appeal rests in part on an erroneous assumption, his failure to secure such bail must rest on the fact he was awaiting trial for arson, and that, therefore, his confinement

[3]"Defendant has a long history of police contact resulting in convictions. [¶] The contacts cover many counties in this State and Canada. [¶] Defendant has failed to appear in the past and has been arrested on outstanding warrants for violation of Probation. [¶] Defendant is presently awaiting Trial in this County on another felony, arson, allegedly committed after this offense. [¶] Evidence was received at Trial of threats to the victim, and while not established beyond a reasonable doubt insofar as the Jury was concerned, it has been considered by this Court in denying bail."

while awaiting resolution of his appeal from his rape conviction is attributable to these proceedings within the meaning of section 2900.5 of the Penal Code.[4]

An examination of the order denying bail (fn. 3) demonstrates that the alleged discrepancy does not leave the pending action as the sole reason for denying bail. There is no factual basis for defendant's contentions.

█ Nor is there a legal basis. *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], makes it clear that a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration. There the court stated, "There is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon defendant's liberty." (*Id.*, at p. 156. See also *People* v. *Ford* (1980) 113 Cal.App.3d 429, 431 [170 Cal.Rptr. 216]; *People* v. *Brown* (1980) 107 Cal.App.3d 858, 861-865 [166 Cal.Rptr. 144]; and *People* v. *Minjarez* (1980) 102 Cal.App.3d 309, 312-313 [162 Cal.Rptr. 292].)

We find nothing in *People* v. *Washington* (1978) 80 Cal.App.3d 568 [145 Cal.Rptr. 653] or *In re Miller* (1974) 41 Cal.App.3d 1046 [116 Cal.Rptr. 624] to aid defendant. In the former case, credit was ordered for time in custody on the new offense when it resulted in a violation of probation that in turn produced a sentence to state prison. In the latter case, the court expressly denied credit for time the defendant was incarcerated on an unrelated crime by other authorities.

The statement in the last sentence quoted above from *In re Rojas, supra*, 23 Cal.3d 152, 156, does not mean that any proceeding which may

---

[4]Penal Code section 2900.5 states in part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when defendant has been in custody, ... all days of custody of the defendant ... shall be credited upon his term of imprisonment ... in the discretion of the court imposing the sentence. [¶] (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted...."

have some effect on defendant's liberty in another proceeding will warrant a credit in the former proceeding. As pointed out in *People* v. *Brown, supra,* 107 Cal.App.3d 858, where probation is revoked on four grounds, the custody thereby resulting cannot be attributed to the new offense which is only one ground. (*Id.,* at pp. 862-863.) We question, however, that the denial of bail can be equated with a proceeding leading to revocation of probation. ▮▮▮ If there was an error in denying bail on appeal, the remedy should be by taking proceedings against that order, not by crediting the defendant with so much time that he can escape punishment for an unrelated offense. (*Id.,* at p. 862.)

We find no merit in defendant's application for more than the one day's credit he did receive on his sentence in this action.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.