Filed 10/17/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061280 |
| v. | (Super. Ct. No. 18NF2732) |
| DOMINIC RENE MOLINA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Affirmed.

Spolin Law, Aaron Spolin and Jeremy Cutcher for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

Midway through the global COVID-19 pandemic, a jury convicted Dominic Rene Molina of committing various sexual crimes against his girlfriend's young daughter. Molina contends that COVID-19 safety protocols implemented at trial, particularly the use of masks and socially distanced seating arrangements, deprived him of his constitutional right to a fair trial, and further that his attorney rendered ineffective assistance by asking the trial court to disclose to prospective jurors that he was in custody. Neither argument has any merit, and we affirm the judgment.

**FACTS**

Molina repeatedly molested his girlfriend's six-year-old daughter, who eventually disclosed the abuse to her father.[1] Molina was charged with three counts of sexual penetration with a child 10 years or younger (Pen. Code, § 288.7, subd. (b)), and two counts of lewd or lascivious acts upon a child under 14 years (*id.*, § 288, subd. (a)).

Trial began in June 2021, well into the COVID-19 pandemic. The trial court implemented safety protocols at trial, including face masks and social distancing. Additionally, at defense counsel's request and with Molina's permission, the court informed potential jurors during voir dire that Molina was in custody because he had not posted the bail set at his initial court appearance, and emphasized to the potential jurors that Molina was nonetheless presumed innocent.

The jury found Molina guilty on all counts, and the trial court sentenced him to a combined term of 45 years to life. Molina filed this appeal challenging the COVID-19 safety protocols used at trial and his counsel's request to have the court disclose to the jury he was in custody.

---

[1] Because of the narrow issues raised on appeal, we provide only a limited summary of the evidence concerning the abuse.

## DISCUSSION

1.    *COVID-19 Protocols*

     a.    *Additional Background*

Molina contends that (1) the use of COVID-19 safety protocols violated his constitutional right to a fair trial, and (2) his trial counsel provided ineffective assistance by failing to object. Before addressing these arguments, we first provide some additional detail about those safety protocols.

Trial began on June 14, 2021, when masking and social distancing were still widely required in certain public settings to minimize the spread of COVID-19. Consistent with those rules, all parties and prospective jurors were required to wear masks during the first day of jury selection, and prospective jurors were seated six feet apart. Molina did not object to these arrangements.

On June 15, 2021 (day two of jury selection), the trial court noted the governor had lifted many COVID-19 safety restrictions effective that day, but the Supreme Court's emergency orders were still in place. The court therefore elected to continue with masking and social distancing until it received further instructions. Again, Molina did not object.

The following Monday, the trial court announced the courthouse was no longer requiring vaccinated individuals to wear masks or socially distance in light of recently revised Cal-OSHA recommendations and corresponding directions issued by the governor. Nine seated jurors and two alternates informed the courtroom deputy they were comfortable sitting in the jury box without socially distancing. Three jurors and one alternate, however, wished to socially distance, and the court permitted them to do so. The court noted that all witnesses would be asked to remove their masks while on the witness stand.

Defense counsel indicated he had no concerns about these arrangements and Molina also wanted to remove his mask. The trial court tentatively denied this

3

request because the jail was still requiring all inmates to mask to prevent the spread of COVID-19 in the jail, and because defense counsel was unsure whether Molina had been vaccinated; however, the court offered to pause proceedings so it could consider the matter further. Defense counsel declined, saying they were prepared to proceed. Counsel for both sides presented opening statements that morning, with Molina masked.

Later that afternoon, after receiving additional guidance during the lunch break from the Orange County Sheriff's jail commander, the trial court gave Molina the option to take off his mask if he could attest that he had been vaccinated. Molina declined and wore his mask for the remainder of the day. The next day, however, he removed his mask.

At one point, roughly midway through the trial, the court received a note from a juror stating a woman seated in the front row was blocking her ability to see the defense attorney. The court resolved the issue by asking that woman to change her seat.

b.      *Analysis*

Citing the above described safety protocols, Molina contends the use of masks and social distancing violated his constitutional right to a fair trial. In particular, he challenges the jurors' use of face masks during voir dire, the trial court's decision to allow certain jurors to continue to wear face masks and sit outside the jury box during trial even after the protocols were lifted, and the court's initial requirement that Molina wear a face mask on the first morning of trial.

As an initial matter, Molina forfeited these assertions by failing to object. (See *People v. Arredondo* (2019) 8 Cal.5th 694, 710.) Anticipating this response, Molina asserts his trial counsel rendered ineffective assistance by failing to object to the masking or social distancing protocols. We disagree, as any objection to the COVID-19 safety protocols at issue here would have been meritless.

California courts have repeatedly rejected constitutional challenges to the use of masks during the COVID-19 pandemic for both defendants and testifying

4

witnesses, citing the important state interest in protecting the public from a contagious disease, the lack of effective alternatives to masking, and the relatively minimal limitation that masks have on jurors' ability to assess witness credibility. (See *People v. Edwards* (2022) 76 Cal.App.5th 523, 525-527 ["The Constitution does not require judges to imperil public health"]; *People v. Lopez* (2022) 75 Cal.App.5th 227, 232-236 [trial court did not err in denying defendant's pretrial motion to remain unmasked during trial and to have witnesses testify unmasked; masks were "necessary to further the public policy of ensuring the safety of everyone in the courtroom during a global pandemic of a highly infectious, potentially deadly virus"]; *People v. Alvarez* (2022) 75 Cal.App.5th 28, 36 ["requiring people to wear masks covering the mouth and the lower part of the nose while testifying in the courtroom during the COVID-19 pandemic served an important state interest in protecting the public from a contagious, and too often, lethal, disease"].)[2]

Federal courts have likewise repeatedly rejected challenges to the masking of potential jurors during voir dire. (See, e.g., *United States v. Schwartz* (E.D. Mich., Nov. 12, 2021, No. 19-20451) 2021 WL 5283948, at *2 ["a defendant can still assess a juror's credibility and demeanor during both voir dire and trial while the juror is wearing a face mask" italics omitted]; *United States v. Watkins* (W.D.N.Y., Aug. 24, 2021, No. 18-CR-32-A) 2021 WL 3732298, at *7 ["defendant and his counsel were able to observe and assess prospective jurors' body language and voices during voir dire" notwithstanding masks]; *U.S. v. Tagliaferro* (S.D.N.Y. 2021) 531 F.Supp.3d 844, 851 [defendant "is still free to examine and assess juror credibility in all critical aspects besides the few concealed by the wearing of a mask"]; *U.S. v. Thompson* (D.N.M. 2021) 543 F.Supp.3d 1156, 1164 ["[r]equiring prospective jurors who have kept their face

---

[2] Molina asserts these cases were wrongly decided but provides no analysis as to why.

masks on to remove their masks [would] create an unacceptable health risk in light of COVID-19"].)

We agree with these cases and conclude that any objection to the masking of prospective jurors during voir dire, of certain jurors during trial, and of Molina on the first morning of trial would have been meritless. To whatever limited extent masks might have hindered defense counsel's ability to read actual or prospective jurors' facial expressions or affected the jurors' ability to assess Molina's demeanor on the first morning of trial, that hindrance was justified by the state's compelling need to protect the health and safety of courtroom participants from a highly contagious and potentially deadly virus.

As for the trial court's decision to allow jurors to socially distance during trial, we again conclude any objection would have been meritless. Molina has cited no authority, statutory or otherwise, requiring jurors to sit in the jury box or within a certain distance of the witness stand during trial. Indeed, a different panel of this court recently rejected a constitutional challenge to socially distancing jurors during the pandemic (*People v. Kocontes* (2022) 86 Cal.App.5th 787, 872); we see no reason to reach a different conclusion here. While we acknowledge counsel must be able to assess the demeanor of jurors, and jurors must be able to assess the demeanor of witnesses, there is nothing in this record to suggest the seating arrangement used in this case inhibited that process.

2.      *Waiving His Right to Disclose He Was In Custody*

Molina next contends his trial attorney provided ineffective assistance in advising him to waive his right to have his custody status kept from the jury. Before addressing that argument, we must again provide some additional background.

At the outset of trial, defense counsel brought an in limine motion asking the trial court to instruct potential jurors during voir dire that Molina was in custody with the explanation that bail had been set at his initial court appearance and Molina had not

yet posted bail, and to admonish the jury that it could not consider his custody status for any purpose. Defense counsel added he was "[q]uite certain" the jury would soon determine Molina's custody status in any event.

The trial court asked whether defense counsel had conferred with Molina about the request and then provided counsel an opportunity to do so. When proceedings resumed, the court informed Molina of his right not to have the jurors learn of his custody status and further addressed the precautions that would be undertaken to ensure they never learned of his custody status. The court noted counsel had an apparent tactical reason for the request and asked Molina whether he understood. Molina affirmed he did, and then confirmed he had no objection to the request.

Consistent with that exchange, during voir dire the trial court instructed the prospective jurors as follows: "You may figure this out as the trial goes on, but the defendant is in custody. He is in custody only because he—bail was set when he was arraigned and pleaded not guilty, and he has not been able to post that bail. You are not to consider the fact of his custodial status for any purpose in this case. It is not evidence of guilt. It is simply that there was a bail set, and he has been unable to meet that bail. The defendant still is presumed innocent, and the People still bear the burden of proving him guilty beyond a reasonable doubt." After giving that admonition, the court received assurances from all potential jurors that Molina's custody status would not affect their ability to fairly evaluate the case.

Complaining he was "blindsided" by the exchange described above, Molina contends he had a right to withhold his custody status from the jury (a right he describes as a "necessary corollary" of his right to be tried in civilian clothing), that revealing his custody status subjected him to a weakened presumption of innocence, and his trial attorney provided ineffective assistance by advising him to waive his right to withhold his custody status.

We are not persuaded. "[T]he mere fact that the jury is made aware of a defendant's custodial status does not deprive the defendant of his constitutional rights." (*People v. Valdez* (2004) 32 Cal.4th 73, 121.) "[A]n isolated comment that a defendant is in custody simply does not create the potential for the impairment of the presumption of innocence that might arise were such information *repeatedly* conveyed to the jury." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1336.)

In any event, any potential prejudice that might have arisen from the jury's knowledge of Molina's custodial status was cured by the trial court's timely admonition. (*People v. Cecil* (1982) 127 Cal.App.3d 769, 778.) Absent any evidence to the contrary, we presume the jury understood and followed the court's instruction to disregard Molina's custodial status. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Accordingly, Molina fails to show he was prejudiced by his counsel's tactical decision to inform prospective jurors he was in custody.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

8