[Civ. No. 11606.   Third Dist.   Aug. 24, 1967.]

GEORGE YOUNG, JR., Petitioner, v. THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Kim & Rishwain and Frank Kim for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Jack R. Winkler and Edsel W. Haws, Deputy Attorneys General, for Real Party in Interest.

PIERCE, P. J.—Petitioner, George Young, Jr., seeks a writ of prohibition to prohibit the trial of a count in an information charging him with an attempt to receive stolen goods.

Two questions are presented: (1) Should the information have been set aside under Penal Code section 995 upon the ground that Young had not been legally committed by a magistrate inasmuch as entrapment (so it is contended) was shown as a matter of law? (2) Since the goods attempted to be "received" were not in fact stolen (although Young thought they were) can he be guilty of a criminal attempt?

The record of the preliminary hearing shows the following:

On January 25, 1967, Baker, a deputy district attorney and Roop, a police officer, placed two television sets and a portable record player, all three items the property of the City of Stockton, none of them having ever been shown to have been

stolen, into Baker's station wagon and covered them with a blanket.

By prearrangement it was planned that McNeer, a special investigator for the Department of Alcoholic Beverage Control, and one Vino, a police informer, were to contact Young, identify the property as stolen and see if Young would purchase it. The two men, pursuant to that plan, did seek out Young at a bar owned by the latter, did inform Young in the vernacular that they possessed stolen goods and asked Young if he could help them. Young, first in doubt as to his acquaintanceship with Vino, later asked to see what they had and was shown the three items. He then asked what they wanted and whether it was a local job. He was told the goods were from an Oakland job. Young left, returned later with a woman who got into his automobile with him, the two drove off and McNeer and Vino followed. After driving around for awhile Young stated he thought they were being followed by police. A rendezvous close by was suggested by Young but the appointment was not kept. Later McNeer and Vino again went to Young's bar. There Young was again importuned to make the purchase, a second meeting a block away was arranged, that appointment was kept, the property was transferred into the trunk of Young's car, Young paid McNeer $65. Young was arrested a short time thereafter. A complaint was filed, a preliminary hearing was held and petitioner was held to answer.

At the preliminary hearing and again on the Penal Code section 995 motion both contentions (stated as the questions before us above) were raised. Although the magistrate held Young to answer he made the following statement:

"THE COURT: This is a case pre-conceived by the Police Department in order to go out and get this man to buy this merchandise. Now, this whole thing originated in the mind of the Police Department and the District Attorney as far as I'm concerned. I'm not trying this case. . . . I'm not satisfied that the law is you can go out and you come into a—people can go out and buy something legitimately, go out here and say now here, this is stolen and I want you to buy it and you can put a man in jail for it and find him guilty of it, I don't buy that. Now, if the court says I'm wrong, I'm wrong, but right now if I ever sat on the Appellate Court I would never hold that, that's not the policy of the law, is to trap people into doing something. That's what you've done in this case. . . . If this case of entrapment was tried before

me I would so hold as a matter of law but I mean that's not before me at this level, I'm not trying it.

### Re the Entrapment Issue

■■■■ It is obvious from the foregoing that the committing magistrate believed (1) that entrapment had been proved as a matter of law but that (2) it was not his function to consider that defense at the preliminary hearing. His conclusion was incorrect. Penal Code section 995 provides that an information must be set aside by the court in which the defendant is arraigned if it appears either (1) that the defendant has not been legally committed by a magistrate or (2) if the defendant has been committed without reasonable or probable cause.

In *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304], our Supreme Court issued a writ of prohibition under that section where the preliminary hearing had disclosed the following facts: Defendant was charged with possession of narcotics. The testimony of the police officers considered alone established probable cause without question. Defendant-petitioner, however, showed that a material witness, not present but almost certain to be available if a short continuance were granted would impeach the officers' testimony and prove a "frame." The magistrate made it clear that he disbelieved the police officers' testimony in material respects, but he said: " 'Now whether the man was, in fact, framed . . . I don't see how that would affect this preliminary at this stage.' " He denied the motion for continuance and held defendant to answer. The trial court denied the Penal Code section 995 motion.

The Supreme Court held that, although informations would not be set aside for "some irregularity or minor error in procedure," it had been the magistrate's duty to grant the short continuance, under the facts disclosed, hear the proffered evidence and then determine the question of probable cause; that there has been a denial of petitioner's substantial right and a denial of procedural due process.

The *Jennings* case is similar to this case. In both, the committing magistrates mistook their powers and obligations of evidence evaluation. The similitude is, however, incomplete. In *Jennings*, the defendant was necessarily prejudiced, and procedural due process violated, *because* the defendant was prohibited from having an opportunity to prove his defense. Here defendant has been prejudiced only *if* the committing magistrate's opinion as to the fact of entrapment was correct.

■ Entrapment exists where the crime is actually planned (instigated) by the police rather than originating in the mind of the defendant and defendant is lured into the commission of the crime. " [W]here a defendant has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment. . . ." (*People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928].)

The question in the instant case is a close one. ■ But we remember first that to raise that which is usually a question of fact to become a matter of law for judicial determination the summation of facts must be such that reasonable minds cannot differ—the conclusion must, to the reasonable mind, be inevitable. ■ Here reasonable minds could not differ that the police *lured* the defendant (that is conceded) but was he just a susceptible person or one already possessed of a *mens rea* just awaiting an opportunity to receive stolen goods under mistakenly "safe" conditions from one with whom he had dealt before—in short, was he a "fence?"

We have concluded, not without dubiety, that reasonable minds could, under this record, reach the latter conclusion. That conclusion seems fortified when we remember secondly that a committing magistrate searches not for proof beyond a reasonable doubt but for probable cause. And that conclusion precludes our holding there was entrapment as a matter of law. But that does not close the book in the decision of this matter.

## RE THE STOLEN GOODS ISSUE

■ The law considers an attempt to be a specific intent to commit a substantive crime plus a direct, equivocal act toward that end. Intent alone is not enough. (*People* v. *Camodeca* (1959) 52 Cal.2d 142, 145 [338 P.2d 903].) The substantive crime involved here is receiving stolen goods. Defendant urges he could not have committed the substantive crime (and therefore could not be guilty of an attempt), because the goods he bought were not stolen. ■ The Attorney General replies that under settled California law, particularly under *People* v. *Rojas* (1961) 55 Cal.2d 252 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252], the goods need not be actually stolen if the defendant thinks that they are and buys them under that belief. In *Rojas,* one of the defendants had what amounted to a standing order with one Hall to buy stolen electrical equipment from him. Hall stole certain conduits to fill that order. He was arrested with the conduits in his possession before he could consummate the transaction with the defendants. He

then implicated defendants, and the police induced him to continue negotiations with defendants and effect a "sale" of the conduits. He did so, defendants were caught and convicted both of receiving stolen goods and, separately, of an attempt. The latter conviction was affirmed on appeal, the former reversed.

In both the *Rojas* case and this one the goods at the moment of their receipt were in one sense not "stolen." In *Rojas*, however, they were stolen-but-recovered; and in a very material way they had not only been stolen but defendants had been instrumental in the fact they were stolen. In the case before us the goods had never been stolen. The police department, in effect, used its own property as bait. That makes a difference.

We have pointed out that intent alone is not in legal contemplation an "attempt." A substantive crime must be involved with a direct act towards its commission. There was no substantive crime at all here. The police merely sold their own property. *People* v. *Camodeca, supra,* 52 Cal.2d 142, 145, was the case upon which our Supreme Court in *Rojas* placed principal reliance. *Camodeca* was an extortion case. The court there states (on p. 147) : "Although the law does not impose punishment for guilty intent alone, it does impose punishment when guilty intent is coupled with action *that would result in a crime* but for the intervention of some fact or circumstance unknown to the defendant. (Citations.) In the present case [*Camodeca*] there was *not a legal* but only a factual impossibility of consummating the intended offense, i.e., the intended victim was not deceived." (Italics supplied.)

Also quoted in *Rojas* (on p. 257) is Smith, *Two Problems in Criminal Attempts* (1957), 70 Harv. L.Rev. 422, 439. That article makes clear the distinction we make here between the *Rojas* and *Camodeca* cases on the one hand and this case. Definitively (on p. 436) it quotes from *Rex* v. *Percy Dalton Ltd.,* 33 Crim. R. 102, as follows :

" 'Steps on the way to the commission of what would be a crime, if the acts were completed, may amount to attempts to commit that crime, to which, unless interrupted, they would have led; but steps on the way to the doing of something, which is thereafter done, and which is no crime, cannot be regarded as attempts to commit a crime.' "

By way of illustration of the quoted rule the author borrows from 1 Wharton, Criminal Law, sec. 225 n. 9 (12th ed. 1932) the case of Lady Eldon who, returning to England

sought to smuggle in what she believed to be duty-payable French lace of great value but which was actually duty-free English lace bought at a price greatly in excess of its value. And by way of contrast the author cites *Regina* v. *Hensler,* 11 Cox Cr. Cases 570 (also cited by our Supreme Court in *People* v. *Camodeca, supra,* at page 146 of 52 Cal.2d) which, like *Camodeca,* was an extortion case. He distinguishes the *Dalton* and *Hensler* cases, as we distinguish the instant case from *Rojas.*

The decision in *Rojas* was directly contrary to *People* v. *Jaffe* 185 N.Y. 497 (1906) [78 N.E. 169, 9 L.R.A.N.S. 263], which it disapproved. The facts in *Jaffe* were indistinguishable from *Rojas.* As the California Supreme Court in *Rojas* stated (on pp. 256-257 of 55 Cal.2d) the *Jaffe* decision has been almost uniformly criticized. It is also criticized by Mr. Smith, but that author says (*op.cit.,* pp. 440-441) :

"But if that result was an absurd one, it was so, it is submitted, not because of any principle, relating to attempts that was applied by the court in that case, but because of the rule that stolen goods *cease to be stolen when once they have been restored to the possession of the owner.* Given that principle, Jaffe must be taken to be the same as the case of D who is offered a car at a very low price by one whom D knows to be a car thief. D believes the car to be stolen but accepts the offer, asking no questions. In fact the car has not been stolen. Surely it is not absurd to suggest that, even if D's state of mind could be proved, he could not be convicted of an attempt." (Italics supplied.)

The illustration quoted is precisely the same as the case before us. We accept Mr. Smith's reasoning.

Let the writ of prohibition issue as prayed for.

Friedman, J., and Regan, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 19, 1967.