[No. F003113. Fifth Dist. June 20, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY MEYER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exceptions of parts II and III.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Mark L. Christiansen, Chief Assistant State Public Defender, Sanders & Ward and Michael J. Ward for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland, Nancy Sweet, Wanda Hill Rouzan and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HAMLIN, Acting P. J.**—Defendant was charged with violating Health and Safety Code section 11104[2] (selling methylamine with knowledge that the purchaser will use the chemical to unlawfully manufacture a controlled substance). At the close of the prosecution's case, defendant moved for acquittal pursuant to Penal Code section 1118.1. The trial court denied de-

---

[2]All further statutory references are to the Health and Safety Code unless otherwise noted.

fendant's motion and permitted the prosecution to reopen its case to amend the information to charge defendant with an attempted violation of section 11104. Defendant then presented his defense. The jury convicted defendant of attempting to sell methylamine in violation of section 11104.

The trial court suspended imposition of sentence and granted defendant probation for a period of three years on condition that he serve one-hundred eighty days in jail. Defendant appealed.

We are not persuaded by defendant's contentions on appeal (1) that he could not properly be convicted of an attempt to sell methylamine in violation of section 11104 based on a sale to a paid police informant and (2) that the poor quality of a police tape recording of the transaction constituted reversible *Hitch* error. (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].) Moreover, while we feel defendant's claim of ineffective assistance of counsel *suggests* an arguably meritorious contention, the silence of the record before this court precludes our consideration of this argument. Thus, we will affirm the judgment.

## THE FACTS

In April 1982 Francis Dean Magers, Jr., employed by the United States Department of Justice, Drug Enforcement Administration (DEA), contacted defendant about a large order for methylamine which defendant had placed with an east coast supplier. Defendant, president of Empire Ag Chemical, told Magers he had ordered a 55-gallon drum of the chemical based on a telephone order from someone named Kenny. Defendant had no order form for the purchase. He told Magers he had no way to contact Kenny since Kenny would just call him from time to time.

At the time Magers talked to defendant, methylamine was subject to a state restriction. Magers testified he believed he told defendant about this restriction and the purpose of the restriction, i.e., the role of methylamine in the chain of producing methamphetamine. He also told defendant it might be in defendant's best interest to cancel the order. It was canceled the following day. Thereafter, Magers asked Gregory Mathews, a paid informant whom Magers had used before, to come to Modesto to work with the Stanislaus County Drug Enforcement Unit (SCDEU) in investigating defendant. Magers had no further contact with defendant or with Mathews until the date of defendant's arrest.

Mathews (who at the time of trial had been paid about $200 for this particular assignment by SCDEU) was introduced to defendant by Mary, whom Mathews had met through Magers and an agent from SCDEU. Ma-

thews told defendant he was working for people who were making methamphetamine and were interested in buying phenyl-2-propanone (P-2-P). Defendant told Mathews he had a chemical, represented to be P-2-P, for sale and could supply other chemicals needed to manufacture the methamphetamine.

At a second meeting defendant offered to sell Mathews P-2-P for $1,700 per gallon or $1,500 per gallon if purchased in a 55-gallon drum. Defendant also discussed again the possibility of supplying methylamine. He told Mathews he had furnished similar supplies to another person through Mary and that person had used the chemicals to obtain a finished product.

Later Mathews called defendant at work and told him "they" were in the middle of cooking a batch and had broken two bottles of methylamine. He arranged to meet defendant outside a restaurant near defendant's business location. Defendant had a gallon bottle of P-2-P and several pints of methylamine in the trunk of his car. He sold the pints to Mathews for a total of $400 and threw in for nothing the gallon of P-2-P, valued at $1,500.

On cross-examination at trial Mathews testified that payment for his services was customary but nothing had been promised to him at the time he contacted defendant. At no time in the course of his conversations with defendant did he tell defendant in express terms that his operation was illegal. Mathews never told defendant he had any use for methylamine other than in the production of methamphetamine.

Defendant testified he sold methylamine to Mathews but did not know Mathews' intent in purchasing that chemical was an illegal one. Mathews gave the only testimony from which it could reasonably be inferred that defendant knew that Mathews would use the methylamine to manufacture methamphetamine.

## DISCUSSION

I. *Could defendant properly be convicted of an attempt to violate section 11104 when the sale of methylamine was made to a police informant?*

Section 11104 was added by Statutes of 1978, chapter 699, section 2.3, and provides: "Any manufacturer, wholesaler, retailer, or other person who sells, transfers, or otherwise furnishes any of the substances listed in subdivision (a) of Section 11100 with knowledge or the intent that the recipient will use the substance to unlawfully manufacture a controlled substance is guilty of a felony." Methylamine is one of the substances listed in subdivision (a) of section 11100.

The Legislative Counsel's Digest concerning Assembly Bill No. 2806 (1977-1978 Reg. Sess.) which added, among other statutory changes, section 11104, states in part:

"Nothing in present law makes it a criminal offense to furnish phenyl-2-propanone, methylamine, D-lysergic acid, ergotamine tartrate, diethyl malonate, malonic acid, ethyl malonate, barbituric acid, or piperidine with knowledge that the recipient will use such substance in the unlawful manufacture of a controlled substance, provided the furnishing is authorized by law.

"This bill would make it a felony to furnish such substances with knowledge that the recipient will use them to unlawfully manufacture a controlled substance. This bill would also require prescribed reports or records, made to the State Department of Justice regarding the transfer, theft, or loss of such substances, to be certified under penalty of perjury."

At trial, as well as on this appeal, defendant focuses on that part of the statute which states that "the recipient *will use* . . ." (italics added) and argues that use of the word "will" precludes application of the statute to "sting" operations, situations in which the recipient is an informant or agent of law enforcement and will not, therefore, actually use the designated chemical to manufacture a controlled substance. Defendant asserts that the word "will" is legally synonymous with the mandatory "shall" or "must" and thus its use in the statute limits the statute's applicability to situations in which the controlled substance will actually and certainly be produced from the designated chemical furnished. Defendant also contends that a police operative who obtains the designated chemical but who will never use that substance for an illegal purpose can never be a "recipient" within the meaning of the statute. The People respond to this argument by pointing out that the word "will" may indicate nothing more than a simple futurity.

It is unnecessary to resolve this battle of dictionary definitions because it misses the point of the statute. It is obvious from the Legislative Counsel's Digest that the focus of the statute is not the conduct of the recipient of the designated chemical but, rather, the knowledge or intent with which the supplier furnished that substance. If the focus of the statute were shifted to the conduct of the recipient and his actual production of a controlled substance, a supplier who furnished any of the designated chemicals with the knowledge or intent they were to be used to manufacture a controlled substance could escape criminal liability by any fortuitous intervening cause which frustrated the recipient's actual production. "In construing statutes, this court is required to interpret them in a manner calculated to give effect to the intent of the Legislature. [Citation omitted.]" (*Landrum*

v. *Superior Court* (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352]; see also 2A Sutherland, Statutory Construction (4th ed. 1984) Literal Interpretation, § 46.07, at p. 110.)

■ Therefore we conclude that defendant's argument—i.e., the use of the word "will" in section 11104 limits criminal liability of a supplier only to one who furnishes a designated substance to a recipient who will *actually* use the chemical to manufacture a controlled substance—is without merit. Moreover, this court is not confronted with a conviction of violating section 11104; defendant was convicted of an *attempt* to violate the statute based on the trial court's agreement, in part at least, with defendant's argument on statutory construction.

A. *Could defendant properly be convicted under the circumstances of this case of an attempt to violate section 11104?*

At the close of the prosecution's case-in-chief, defendant moved pursuant to Penal Code section 1118.1 for acquittal. Defendant's motion was based on an argument similar to that discussed above—i.e., the statutory language, "the recipient will use . . ."—rendered the statute inapplicable to a police "sting" operation in which the recipient, as a police agent or informant, would not, in fact, use the designated chemical to manufacture a controlled substance.

The trial court denied defendant's motion and permitted the People to reopen and to amend the information to allege attempted violation of section 11104.

■ Defendant now contends on appeal that "[o]ne cannot attempt that which is legally impossible." Defendant's argument concerning the nature of the impossibility in this case, i.e., whether it is a legal or a factual one, presupposes that the Legislature's use of the word "will" was intended to create a situation in which actual manufacture was a necessary element. Defendant analogizes to cases arising under Penal Code section 496, discussing criminal liability for receipt of property believed by the recipient to be stolen but which is, in fact, not stolen property.

California courts have rarely departed from a rationale first articulated by the Supreme Court in *People* v. *Camodeca* (1959) 52 Cal.2d 142 [338 P.2d 903] which supports a finding of criminal liability for an *attempted* offense when the actual commission of the offense is thwarted because some fact or circumstance is unknown or misunderstood by the actor. ■ In *Camodeca,* the court upheld a conviction for attempted extortion and stated in part:

"One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime. Although the law does not impose punishment for guilty intent alone, it does impose punishment when guilty intent is coupled with action that would result in a crime but for the intervention of some fact or circumstance unknown to the defendant. [Citations omitted.] In the present case there was not a legal but only a factual impossibility of consummating the intended offense, i.e., the intended victim was not deceived." (*Id.,* at p. 147. See also *Faustina* v. *Superior Court* (1959) 174 Cal.App.2d 830, 833-834 [345 P.2d 543].)

Two years later the California Supreme Court decided *People* v. *Rojas* (1961) 55 Cal.2d 252 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252], and rejected the defendant's contention that the use by the police of "recovered" stolen property, underlying a charge against defendant of attempting to receive stolen property, precluded his conviction. Defendant argued that since the property had been recovered by the police it was no longer stolen; therefore defendant contended he could neither receive stolen property nor attempt to do so. The court stated in part: "In the case at bench the criminality of the attempt is not destroyed by the fact that the goods, having been recovered by the commendably alert and efficient action of the Los Angeles police, had, unknown to defendants, lost their 'stolen' status, . . . In our opinion the consequences of intent and acts such as those of defendants here should be more serious than pleased amazement that because of the timeliness of the police the projected criminality was not merely detected but also wiped out." (*Id.,* at p. 258.) (See also *People* v. *Cecil* (1982) 127 Cal.App.3d 769, 776 [179 Cal.Rptr. 736]; *People* v. *Osborne* (1978) 77 Cal.App.3d 472, 476 [143 Cal.Rptr. 582]; 1 Witkin, Cal. Crimes (1963) Elements of Crime, §§ 99-103, pp. 94-98; *id.* (1983 supp.) pp. 97-99.)

The difference between factual impossibility, as discussed in *Camodeca* and *Rojas,* and the legal impossibility for which defendant in the instant case argues is apparent in the decision in *People* v. *Meyers* (1963) 213 Cal.App.2d 518, 523 [28 Cal.Rptr. 753], where the court stated: "The courts of this state have not concerned themselves with the niceties of distinction between physical and legal impossibility, but have focused their attention on the question of the specific intent to commit the substantive offense. The hypothesis of the rule established in this state is that the defendant must have the specific intent to commit the substantive offense, and that under the circumstances, as he reasonably sees them, he does the acts

necessary to consummate the substantive offense; but because of circumstances unknown to him, essential elements of the substantive crime are lacking. [Citations omitted.] It is only when the results intended by the actor, if they happened as envisaged by him, would still not be a crime, then and only then, can he not be guilty of an attempt." (See also *People v. Peppars* (1983) 140 Cal.App.3d 677, 687, fn. 5 [189 Cal.Rptr. 879] ["'"Legal impossibility" denotes conduct where the goal of the actor is not criminal, although he believes it to be. "Factual impossibility" denotes conduct where the objective is proscribed by the criminal law, but a circumstance unknown to the actor prevents him from bringing it about.' [Citation omitted.]"].)

■ Defendant places great reliance on *Young v. Superior Court* (1967) 253 Cal.App.2d 848, 852-854 [61 Cal.Rptr. 355]. In *Young* the property which was represented to be stolen property had never in fact been stolen; it was simply property which had been removed from the police property room. The court in *Young* held, under those circumstances, there could be no conviction for an attempt to receive stolen property. However, we have found no case after *Young* which adopted this distinction. (See, e.g., *People v. Moss* (1976) 55 Cal.App.3d 179, 181-183 [127 Cal.Rptr. 454]; *Lupo v. Superior Court* (1973) 34 Cal.App.3d 657, 663 [110 Cal.Rptr. 185].) More importantly, the same court that decided *Young* rejected its holding in *People v. Wright* (1980) 105 Cal.App.3d 329, 332 [164 Cal.Rptr. 207].

Applying this settled California rule to the facts before us, we find that the trial court was correct in determining that completion of the substantive offense in the instant case was a factual impossibility, not a legal one, since the recipient of the designated chemical furnished by defendant was a police informant who would not in fact use the substance in the manufacture of a controlled substance, i.e., methamphetamine. However, as is clear from the California authorities summarized above, when commission of the substantive offense is factually impossible, a defendant may be convicted of an *attempt* to commit the offense when it is proven that he had the specific intent to commit the offense and did those acts he believed necessary to consummate it but failed to commit the statutory offense because, unknown to the actor, one or more of the essential elements of the offense were lacking. (*People v. Meyers, supra,* 213 Cal.App.2d at p. 523.) Therefore, while defendant is correct that one cannot be convicted for attempting to do that which is legally impossible, defendant's conviction in the instant case was proper.

■ Defendant argues as a separate subissue that "[t]he Legislature created the special statute and its scope should not be expanded by this court." We are not persuaded. The Legislature could not reasonably have intended

to create a "special" statute which would absolutely foreclose the use of agents or informants by drug enforcement officials seeking to carry out the law.

B. *Did the trial court err when it permitted the People to amend the information to charge the attempted violation of section 11104?*

Defendant next contends, in two separate arguments, that (1) the trial court violated the "general-specific" rule when it permitted the prosecution to amend the information to charge an attempted violation of section 11104, and (2) the amendment prejudiced defendant and therefore violated Penal Code section 1009. We reject both contentions.

The Supreme Court defined the "general-specific" rule in *People* v. *Gilbert* (1969) 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580] as follows: " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' [Citations omitted.]" (*Id.,* at p. 479.) There is no question in the instant case but that one statute is involved, i.e., section 11104. An *attempt* to violate the statute is not, in itself, a "special act" which would trigger the general-specific analysis as defined above. We have found no case, nor has defendant called our attention to any case, which defines an attempt to commit an offense as a "special" statute, prosecution for which is foreclosed if the People first elect to charge the substantive offense itself. We see no reason to depart from settled judicial interpretation of the "general-specific" rule as applicable to two separate and distinct statutes which happen to touch upon the same criminal conduct.

This conclusion is buttressed by the premise that every substantive criminal offense necessarily includes the attempt to commit it. Penal Code section 1159 provides, "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." (See also *People* v. *Vanderbilt* (1926) 199 Cal. 461, 463-464 [249 P. 867]; *People* v. *Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859].)

Similarly, we find no merit in defendant's contentions that he was prejudiced by the prosecution's amendment of the information to charge him with an attempted violation of the statute and that therefore the trial court erred in permitting the amendment.

■ In *People* v. *Brown* (1973) 35 Cal.App.3d 317, 322-323 [110 Cal.Rptr. 854], the court articulated the following test: "The test for determining whether the trial court abused its discretion in permitting the amendment of the information is whether the amendment prejudiced the substantial rights of the defendant, and attempted to change the offense to one not shown by the evidence taken at the preliminary examination. [Citations omitted.] . . . '". . . [A]n amendment cannot be made under the section [Pen. Code, § 1009] if it prejudices the substantial rights of a defendant; and inasmuch as he is furnished with a copy of the transcript of the proceedings at the preliminary hearing, he has notice of any charge that under the section may be placed against him by amendment of the information. The section itself preserves the substantial rights of the party to a trial on a charge of which he had due notice, and that is all the Constitution requires.'''" ■ Defendant knew from the time of the preliminary hearing that the recipient of the methylamine was a police informant; applying the rationale of *People* v. *Brown, supra,* and defendant's own argument in support of his Penal Code section 1118.1 motion, defendant was aware of the problem raised by the informant's participation in the sale vis-à-vis defendant's liability for the substantive offense itself and was similarly aware of his potential liability for the attempt. Thus the trial court did not abuse its discretion in permitting the amendment.

■ Moreover, notwithstanding the action of the trial court in permitting the People to amend the complaint, it seems clear from applicable case authority that amendment of an accusatory pleading is not necessary in order to convict a defendant of a necessarily lesser included offense or an attempt to commit the substantive offense. As the court stated in *People* v. *Wong* (1973) 35 Cal.App.3d 812 [111 Cal.Rptr. 314]: "We observe, too, that in determining a motion pursuant to Penal Code section 1118.1, the trial judge is entitled to consider whether, although the evidence is insufficient to establish the commission of the crime specifically charged in the accusatory pleading, the evidence is sufficient to sustain a conviction of a necessarily included offense which the evidence tends to prove. A defendant may be convicted of a lesser offense if he was charged with a felony which included the lesser offense. [Citations omitted.]" (*Id.,* at p. 828.) ■ *People* v. *Wong, supra,* relies in part upon Penal Code section 1159, cited above, which makes clear that both lesser included offenses and attempts to commit a substantive offense are included *by statute* within the realm of allowable convictions available to the trier of fact. Thus, in the instant case, the trial court could properly have denied defendant's motion for acquittal pursuant to Penal Code section 1118.1 based on its determination that the evidence presented was sufficient to sustain a conviction of an attempt to commit the offense and could have subsequently instructed the jury accordingly.

Defendant mistakenly relies on *People* v. *Berkowitz* (1977) 68 Cal.App.3d Supp. 9, 14 [137 Cal.Rptr. 313], disapproved on other grounds in *People* v. *Superior Court* (*Douglas*) (1979) 24 Cal.3d 428, 435 [155 Cal.Rptr. 704, 595 P.2d 139]; that case is inapposite. There, the court held that the trial court had abused its discretion in permitting an amendment at the close of trial and before argument. The amendment charged defendant with two counts virtually unrelated to the accusatory pleading, and the defendant was not granted a continuance in order to respond to the charges. That situation is simply so dissimilar to the circumstances before this court that analysis of the case adds nothing.

Particularly since defendant could have been convicted of an attempt to violate section 11104 as an offense necessarily included in that charged in the information, whether or not the information was actually amended to charge the attempt, we conclude defendant was not prejudiced by the amendment and, consequently, the trial court did not abuse its discretion in permitting it.

II. *Did the trial court err in denying defendant's motion to strike all references to a tape recording made of the transaction between defendant and the police informant?** 

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Martin, J., and Vander Wall, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied October 2, 1985.

---

*See footnote 1, *ante,* p. 496.
†Assigned by the Chairperson of the Judicial Council.