Filed 7/25/14  P. v. Santana CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B248278 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA123745) |
| v. | |
| REYNALDO SANTANA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John A. Torribio, Judge.  Affirmed as modified.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Reynaldo Santana appeals from a judgment entered after a jury found him guilty of committing a lewd act upon a child under the age of 14 years. (Pen. Code, § 288, subd. (a).)[1] After Santana admitted a prior conviction for continuous sexual abuse of another child (§ 288.5), the trial court sentenced him to 55 years to life in prison.

Santana contends the trial court erred in failing to instruct sua sponte on lesser included offenses, unanimity, and "that the touching be for immediate or concurrent sexual gratification, not just to facilitate a subsequent sexual touching." He also contends the court made errors (1) in overruling his objection to a "misstatement of the law" in the prosecutor's closing argument and (2) in conducting the court trial on his prior conviction (before he admitted that conviction).

As explained below, we modify the minute order from the sentencing hearing and the abstract of judgment to correct a clerical error regarding a statutory sentencing provision. As so modified, we affirm.

## BACKGROUND

### Evidence Presented at Trial

The victim is Santana's granddaughter, Elizabeth. Santana's son is Elizabeth's father. The conduct which forms the basis of the lewd conduct charge occurred in late August 2011, when Elizabeth was eight years old. Elizabeth reported Santana's conduct to her mother, Nancy R., in October 2011. The evidence presented at trial began with that disclosure. Elizabeth was nine years old at the time trial commenced on March 26, 2013.

#### Nancy R.'s testimony

On October 17, 2011, Santana picked up Nancy and her seven-year-old son at the train station. Santana drove them to his ex-wife's (Elizabeth's grandmother) home to pick up Elizabeth. As she entered the car, Elizabeth did not "say hi" or "anything" at all. From there, Santana took Nancy and her two children to their house. Nancy noticed Elizabeth was quiet on the ride home, which was "strange."

---

[1] Further statutory references are to the Penal Code.

2

When they arrived at her house, Nancy exited Santana's car and took her belongings inside. Elizabeth also exited the car, but stayed outside. When Nancy returned, Santana and Elizabeth were standing behind the car looking at clothes Santana had bought for Elizabeth. Elizabeth appeared "happy" as Santana showed her the clothes. Santana had often given Elizabeth gifts during the short period of time he was in her life—between one and two months.

Before he left on October 17, 2011, Santana asked Elizabeth for a hug and kiss. Elizabeth "stepped back" from him. Nancy told Elizabeth to hug and kiss Santana and "give him a thank you." Elizabeth gave Santana a "[q]uick hug and release." They said goodbye and Santana drove away.

When they went inside the house, Nancy asked Elizabeth "what was going on." Nancy thought Santana and Elizabeth had "a good relationship." Elizabeth had "always" seemed "happy" when Santana bought her gifts and took her for outings to get ice cream and to see movies. Nancy had never seen Elizabeth act "strange" around Santana prior to October 17, 2011.

Elizabeth told Nancy "the reason why she didn't want to hug and kiss her grandfather" (Santana). Elizabeth explained that on the day Santana took her to see The Smurfs movie—which Nancy recalled was during the last week of August in 2011—Santana made her touch him while he was wearing his underwear.[2] Nancy's "heart fell." Although she was aware Santana had been in trouble in the past for sexual misconduct with children, she had allowed Elizabeth to spend time alone with him.

On October 17, 2011, Nancy called the sheriff's department to report Santana's conduct. A deputy responded to her home that evening and interviewed her and Elizabeth. According to Nancy, Elizabeth told the deputy Santana should go to jail for what he did to her. A few days later, a detective interviewed Nancy and Elizabeth.

---

[2] Sustaining Santana's hearsay objection, the trial court did not allow Nancy to testify about the specific statements Elizabeth made to her regarding the charged conduct.

**Elizabeth's testimony**

In August 2011, Santana took Elizabeth to see The Smurfs movie. Elizabeth felt "[s]cared" during the movie because Santana "was sticking his hand down [her] back." She demonstrated at trial how Santana was touching her back below the nape of her neck.

After the movie and a stop at a shoe store, Santana brought Elizabeth back to his home. At trial, the prosecutor asked Elizabeth, "When you got back to his home, what happened at his home?" Elizabeth responded, "He made me touch his penis." During further questioning, Elizabeth explained how the touching occurred.

Elizabeth was sitting by herself on the couch watching television. Santana, who was wearing pants and a shirt, went inside the bathroom and came out wearing only boxer shorts. He grabbed a blanket, sat down on the couch next to Elizabeth, and covered the two of them with the blanket. Their hands were underneath the blanket. Santana grabbed Elizabeth's wrist, pulling her hand toward him, "and made [her] touch his penis."

On direct examination by the prosecutor, Elizabeth initially denied her hand touched the skin on Santana's penis. She testified the tip of her left index finger "[j]ust barely" touched Santana's boxer shorts over his penis. She described the sensation she felt as "[s]mooth." Later, on redirect examination, Elizabeth testified the tip of her finger touched both Santana's boxer shorts and the skin on the tip of his penis.

Elizabeth felt scared as Santana covered her with the blanket, grabbed her wrist, and made her touch him. When her finger made contact with his boxer shorts/penis, she "pulled away and he let go." Santana told her, "You should listen to me." He "got up and grabbed the blanket." Later, Santana put on swimming trunks and Elizabeth went swimming in a pool with him and his female friend.

On the day it happened, Elizabeth did not tell anyone about the incident with Santana. She was "scared" Santana "might do something to [her] mom or something like that." Elizabeth wound up telling her mother (Nancy) about the incident when her mother asked her why she did not want to hug Santana on an occasion when he came "to drop . . . off clothes and stuff." Elizabeth told her mother, "he made me touch his penis."

4

According to Elizabeth, her mother "started crying and called the cops." Elizabeth told a deputy about the incident on the day it occurred. A few days later, she spoke with a detective. She also met with counselors and told them about the incident.

Elizabeth answered affirmatively when Santana's counsel asked her if she had talked to her mother and grandmother (Santana's ex-wife) "a lot about what happened" with Santana. Elizabeth acknowledged her mother and grandmother were "mad" about what happened, and they told her they thought Santana should go to jail for what he did to her. Prior to testifying, Elizabeth spoke with her mother and grandmother about what was going to happen at trial.

On cross-examination by Santana's counsel, Elizabeth stated she recalled at the preliminary hearing she testified her hand "was about to touch" Santana's penis. On redirect examination, Elizabeth explained her hand touched Santana's boxer shorts, and that is what she meant when she testified at the preliminary hearing that Santana "tried to make [her]" touch his penis.

**Deputy Blanca Creta's testimony**

Deputy Creta responded to Elizabeth's home in the evening on October 17, 2011, the same day Nancy called the sheriff's department to report Santana's conduct. Nancy told Creta she asked "Elizabeth what was wrong and Elizabeth told [her] that on a previous occasion Mr. Santana had forced her to touch his groin."

Deputy Creta testified as follows regarding Elizabeth's October 17, 2011 account of what occurred in late August 2011: "She [Elizabeth] said that her grandfather suspect Santana, Mr. Santana, had taken her to watch a movie at a theater. They watched Smurfs and then they returned to his residence and while sitting on the couch he pulled a blanket over them and grabbed her hand and put it over his groin and her tip of her fingers touched the penis, which she described to be hard as plastic and a circle, round. She pulled her hand away from the location and that was the end of the incident." According to Creta, Elizabeth explained, "she felt the penis over . . . the boxers." Elizabeth also told Creta that Santana said, "'You need to listen. I thought you were a good girl.'"

5

**Detective Ronald Anderson's testimony**

On October 20, 2011, Detective Anderson interviewed Elizabeth at her elementary school. Nancy was not present. Elizabeth told Anderson that Santana "grabbed her hand and put it on [t]op of his penis over the clothing." Elizabeth stated, when the incident occurred, Santana was wearing boxer shorts that were "light blue and dark blue with a checkered pattern." Elizabeth described the feel of the penis as "mushy." She told Anderson, when she pulled her hand out of Santana's grasp, Santana said, "'I thought you were a good girl.'" Elizabeth stated, prior to this incident, Santana had never touched her or tried to touch her in a way that made her feel uncomfortable. Elizabeth did not tell Anderson about Santana touching her back during the movie.

Detective Anderson interviewed Nancy on November 3, 2011. Nancy told him that Elizabeth stated Santana "had forced [her] to touch h[is] private."

**Joyce Toledo's testimony**

On December 1, 2011, when Toledo was working as a school-based therapist, she spoke with Elizabeth at her elementary school. Nancy was not present. Elizabeth told Toledo that Santana "grabbed [her] hand and put it on his shorts" and "she felt his thing down there." Elizabeth described Santana's shorts as boxer shorts. She told Toledo that Santana's pants were "off." Elizabeth gestured, however, that Santana's pants were pulled down below his knees and above his ankles. She did not tell Toledo that Santana had gone inside the bathroom and taken off his pants. Elizabeth told Toledo about incidents during which Santana touched her on her back.

Santana did not testify or call any witnesses in his defense. The parties stipulated "that in 1999 Mr. Santana was convicted of continuous sexual abuse on two children under the age of eight. These children were his girlfriend's daughters."

**Verdict, Court Trial on Prior Conviction, and Sentencing**

On March 27, 2013, the jury found Santana guilty of committing a lewd act upon a child under the age of 14 years. After the reading of the verdict, the trial court set a date for the court trial on the allegations in the information relating to Santana's prior conviction for continuous sexual abuse of a child in violation of section 288.5. The court

6

inquired, "Do the People need to bring in their fingerprint people and everything or what's going to happen?" Santana's counsel responded, "I'll let him [the prosecutor] know."

At the outset of the next hearing on April 23, 2013, the trial court stated, "[the prosecutor] has submitted to the court a certified copy . . . of the Department of Corrections packet, showing a conviction for Reynaldo Santana Jr. of 288.5. [¶] There was also a picture of Mr. Santana, which is the same as the gentleman here in court." The court asked the prosecutor, "Anything else by the People?" and the prosecutor responded, "No, Your Honor."[3]

The trial court asked the defense to present its case. Defense counsel stated: "We have no evidence, Your Honor, only submit that the packet is insufficient without either fingerprint comparison or some other more specific identifying information. [¶] We'll submit that to the court."

The following discussion ensued between the parties and the trial court:

"[Prosecutor]: If the court wants to take a break, I inquired of [defense counsel] whether or not his client --

"The Court: I can't say beyond a reasonable doubt. The picture is so old --

"[Prosecutor]: If you don't mind, I can ask for somebody to come and roll prints.

"The Court: That's fine. The picture is so old.

"[Prosecutor]: That's fine.

"The Court: Trail it until this afternoon?"

"[Defense counsel]: One second, Your Honor. I did speak a moment ago about admitting. He's indicating now it may be a non issue."

---

[3] We provide this detail regarding the hearing on the prior conviction allegations because, as discussed in more detail below, Santana contends on appeal the trial court erred "in allowing the prosecutor to reopen his case on the prior conviction in order to supply additional evidence, where the court already pronounced its judgment that the evidence was insufficient."

After defense counsel and Santana conferred off the record, defense counsel indicated Santana wanted to admit the prior conviction. The trial court told Santana the prosecutor "is willing to get the fingerprint expert." Santana explained, "I don't want to waste the court's time." Santana admitted the prior conviction for continuous sexual abuse of a child in violation of section 288.5, and the court found the allegations in the information relating to that conviction to be true.

The trial court sentenced Santana to 55 years to life in prison: 25 years to life for the current sex offense due to the prior sex offense (§ 667.61, subds. (a) & (d)(1)),[4] doubled to 50 years to life under the Three Strikes law (§§ 667, subds. (b)-(1), 117012, subds. (a)-(d)), plus five years for the prior serious felony enhancement (667, subd. (a)(1)).

## DISCUSSION

### Jury Instructions

Santana contends the trial court had a sua sponte duty to give several additional jury instructions, as specified below.

#### Lesser included offenses

Santana did not ask the trial court to instruct the jury on attempted lewd conduct or battery. In his opening brief on appeal, he contends the court had a sua sponte duty to give instructions on these additional offenses because they are lesser included offenses of lewd conduct. We need only decide whether the court had a sua sponte duty to instruct on attempted lewd conduct. As Santana acknowledges in his appellate reply brief, our

---

[4] The minute order from the April 23, 2013 sentencing hearing and the abstract of judgment, incorrectly indicate the trial court imposed the term of 25 years to life under section 667.6, subdivision (a). As reflected in the reporter's transcript from the sentencing hearing, the court correctly cited section 667.61 in imposing the term of 25 years to life for the offense, as alleged in the information. As set forth in the disposition below, we order the trial court to correct the minute order and abstract of judgment to reflect the correct statutory provision. There is a box that may be checked on the bottom of the first page of the abstract of judgment to reflect "Defendant was sentenced pursuant to" section 667.61 (not § 667.6), in addition to the provisions of the "Three Strikes" law.

Supreme Court has concluded, "battery is not a lesser included offense of lewd conduct." (*People v. Shockley* (2013) 58 Cal.4th 400, 406 ["Accordingly, if only lewd conduct is charged, the trial court has no duty to instruct on battery as a lesser included offense"].)

"'Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154, fn. 5.) A trial court errs if it fails to instruct "on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*Id.* at p. 162.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude'" that the lesser offense, but not the greater, was committed. [Citations.]" (*Ibid.*)

As set forth in section 288, subdivision (a), "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." "Nothing in this language . . . requires that specific or intimate body parts be touched." (*People v. Martinez* (1995) 11 Cal.4th 434, 442.) "In all cases arising under the statute, the People are required to prove that the defendant touched the child in order to obtain immediate sexual gratification." (*Id*. at p. 452.)

An "attempt is a lesser included offense of any completed crime." (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609.) "[E]very substantive criminal offense necessarily includes the attempt to commit it." (*People v. Meyer* (1985) 169 Cal.App.3d 496, 506.) "'An attempt to commit a crime has two elements: the intent to commit the crime and a

9

direct ineffectual act done towards its commission.' [Citation.]" (*People v. Davis* (2009) 46 Cal.4th 539, 606.)

Elizabeth consistently reported—to Deputy Creta, to Detective Anderson, to counselor Joyce Toledo—that Santana grabbed her wrist and pulled her hand to his penis, and she touched his penis over his boxer shorts. Elizabeth testified consistently at trial.[5] Thus, the record contains evidence of a completed lewd act, not attempted lewd conduct.

In arguing there was "substantial evidence of an attempt rather than a consummated crime," Santana cites Elizabeth's preliminary hearing testimony that her hand "was about to touch" Santana's penis. Santana asserts, "If his intent in grabbing her wrist was to facilitate the subsequent touching of his penis, not for its own sake – that is, if he did not intend sexual gratification from grabbing the wrist – then a juror could have found that the crime was attempted lewd conduct, which was thwarted when [Elizabeth] pulled her hand away before touching the crotch or penis."

At trial, Elizabeth explained her hand touched Santana's boxer shorts, and that is what she meant when she testified at the preliminary hearing that Santana "tried to make [her]" touch his penis. But even without this clarification, the evidence, if credited, is clear that when Santana grabbed Elizabeth's wrist while sitting next to her under a blanket and pulled her hand, he did so in order to obtain immediate sexual gratification by forcing her to touch his penis. Substantial evidence does not support Santana's theory that when he grabbed Elizabeth's wrist he intended future sexual gratification and not immediate sexual gratification.

The trial court did not have a sua sponte duty to instruct on attempted lewd conduct.

---

[5] Elizabeth's testimony at trial was equivocal about whether her finger actually touched the skin of Santana's penis. But that inconsistency is not material to our analysis of this issue.

10

**Unanimity**

Santana contends the trial court had a sua sponte duty to give a unanimity instruction.

As our Supreme Court has explained, "The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed h[im] guilty of another. But unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*People v. Russo* (2001) 25 Cal.4th 1124, 1134-1135.)

Santana argues "there were two acts that could support the single count of lewd conduct"—Santana grabbing Elizabeth's wrist and not succeeding in placing it on his penis, and Santana grabbing Elizabeth's wrist and succeeding in placing it on his penis (whether over or under the boxer shorts). He asserts, "Without a unanimity instruction, the jurors could have found Santana guilty without unanimously agreeing which crime he committed."

We reject Santana's position. As discussed above, the evidence demonstrates Santana grabbed Elizabeth's wrist and pulled her hand to his penis in order to obtain immediate sexual gratification. There is one discrete criminal event, one incident of lewd conduct. To the extent jurors could have divided about whether Elizabeth's hand actually made contact with Santana's penis, the trial court did not have a sua sponte duty to give a unanimity instruction. "[U]nanimity as to exactly how the crime was committed is not required." (*People v. Russo*, *supra*, 25 Cal.4th at p. 1135.)

11

**Omission of specific instruction "that the touching be for immediate and concurrent sexual gratification"**

The trial court instructed the jury, in pertinent part:

"In the crime charged there must exist a union or joint operation of act or conduct with a certain specific intent in the mind of the perpetrator. Unless this specific intent exists, the crime to which it relates is not committed.

"The specific intent required is included in the definition of the crime set forth elsewhere in these instructions. [CALJIC No. 3.31.]

"The defendant is accused of having committed the act of lewd act on a child, in violation of 288 of the Penal Code.

"Every person who willfully commits any lewd and lascivious act upon or with the body or any part or member thereof of a child under the age of 14 years, with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or the child, is guilty of the crime of committing a lewd act or lascivious act upon the body of a child in violation of 288(a).

"A lewd or lascivious act is defined as any touching of the body of a child under the age of 14, with the specific intent to arouse, appeal to or gratify, the sexual desires of either party. To constitute a lewd or lascivious act, it is not necessary that bare skin be touching -- be touched. The touching may be through the clothing of the child.

"The law does not require as an essential element of the crime that the lust, passion or sexual desires of either of such persons be actually aroused, appealed to, or gratified.

"In order to prove this crime, each of the following elements must be proven:

"1. A person touched the body of a child.

"2. The child was under the age of 14 years.

"3. The touching was done with the specific intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person or the child. [CALJIC No. 10.41.]"

Santana contends the trial court had a sua sponte duty to instruct the jury "that the touching be for immediate or concurrent sexual gratification." As discussed above, our

12

Supreme Court has explained, "In all cases arising under the statute [§ 288, subd. (a)], the People are required to prove that the defendant touched the child in order to obtain immediate sexual gratification." (*People v. Martinez*, *supra*, 11 Cal.4th at p. 452.) While Santana does not cite a case indicating a trial court ever has a duty to instruct a jury with this particular language, he argues the trial court's omission of the proposed instruction resulted in the jury being "left with insufficient guidance with respect to a critical fact in *this* case: whether the grabbing of the wrist qualified as a consummated lewd act."

CALJIC No. 10.41 plainly informed the jury, to find Santana guilty of the charged offense, it had to find Santana touched Elizabeth "with the specific intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of" Santana or Elizabeth. In other words, Santana had to intend sexual gratification at the time he touched Elizabeth (immediately). Thus, the instructions given were not "incomplete and misleading" as Santana asserts. Accordingly, the trial court did not have a sua sponte duty to instruct the jury with the additional language Santana proposes.

**Prosecutor's Closing Argument**

Santana contends the trial court erred in overruling his objection to a "misstatement of the law" in the prosecutor's closing argument.

In Santana's closing argument, defense counsel posited that Elizabeth's grandmother said something to her on October 17, 2011, which caused Elizabeth to make this (false) accusation against Santana.

In his rebuttal closing argument, the prosecutor stated, in pertinent part:

"As I said, you have to decide this case based off the evidence that you received and apply that [to] the law that the judge gives you.

"One of the things that goes into that is that you can only decide this case based upon again the testimony that you received and the evidence in this case. Now what you see [defense counsel] doing, and again People have the burden of proof to prove the case beyond a reasonable doubt, okay, [defense counsel] doesn't have to do anything, but both sides can call witnesses. Okay. Both sides can call witnesses. Now neither side called

grandma, okay. So, [defense counsel] makes a tremendous amount of -- takes a lot of time to talk about what happened with grandma, what happened with grandma.

"As far as Elizabeth goes and Nancy goes, nothing, nothing. And yet, [defense counsel] wants you to now take [*sic*] and sit there and talk about grandma. Folks, would you be talking about evidence in this case if you did that? No. Both sides could have called grandma. She is not here. She was not here. There was no testimony received. If you go back there and talk about grandma, you are not talking about the evidence."

At that point in the prosecutor's rebuttal argument, defense counsel interjected, stating, "Objection, Your Honor. Misstates the law." The trial court overruled the objection and the prosecutor continued with his argument.

Santana argues the prosecutor's comments amounted to a misstatement of the law that the jury could not consider the defense's theory "because the grandmother never testified." This defense theory, as stated by Santana on appeal, is that "the grandmother inadvertently or maliciously influenced Elizabeth to revisit the touching and interpret it as sexual rather than affectionate."

The prosecutor was merely commenting on the state of the evidence, and arguing there was no evidence supporting the defense's theory. Neither side presented any evidence indicating the grandmother and Elizabeth had spoken about Santana prior to Elizabeth's disclosure on October 17, 2011. Neither side presented any evidence demonstrating the grandmother harbored ill will toward Santana, other than the bald fact that the grandmother was Santana's ex-wife. The prosecutor was asking the jury not to speculate that the grandmother had influenced Elizabeth's disclosure.

The prosecutor did not commit misconduct and the trial court did not err in overruling defense counsel's objection to the prosecutor's comments.

**Court Trial on Prior Conviction**

Santana contends the trial court erred "in allowing the prosecutor to reopen his case on the prior conviction in order to supply additional evidence, where the court already pronounced its judgment that the evidence was insufficient." We already summarized above the relevant trial court proceedings on this issue.

14

Santana concedes that his argument regarding a violation of the double jeopardy clause of the United States Constitution has been resolved against him by the California Supreme Court, and that we are bound to follow that precedent. (*People v. Monge* (1997) 16 Cal.4th 826; *People v. Barragan* (2004) 32 Cal.4th 236, 241 ["in the noncapital sentencing context, retrial of a prior conviction allegation does not violate the double jeopardy clause of the federal Constitution"].)

Santana also argues the trial court "abused its discretion under state law and the Sixth Amendment in allowing the prosecutor to reopen his case." We address the issue on the merits even though defense counsel did not raise an objection below and Santana admitted the prior conviction at the same hearing. Santana argues his counsel was ineffective in failing to object, and his admission was tainted by the trial court's error.

The trial court did not err in conducting this bench trial on the prior conviction allegations. "The trial court has broad discretion to reopen a case to allow introduction of additional evidence." (*People v. Ceja* (1988) 205 Cal.App.3d 1296, 1304.) The record makes clear there had been prior discussions between the parties about whether Santana would admit the prior conviction or require the prosecutor to prove it. Those discussions continued during the hearing. The court did not abuse its discretion in entertaining a brief, same-day continuance to allow the prosecutor to bring in fingerprint evidence.

## DISPOSITION

The trial court is directed to correct the minute order from the April 23, 2013 sentencing hearing, and the abstract of judgment to reflect Santana was sentenced pursuant to 667.61, not 667.6. As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.